LOUISE E. KIZIS *v.* MORSE DIESEL INTERNATIONAL, INC., ET AL.
(SC 16499)

Sullivan, C. J., and Borden, Katz, Palmer and Vertefeuille, Js.

---

Argued December 4, 2001—officially released April 16, 2002

*Dale T. White*, with whom were *Andrew Houlding* and, on the brief, *Lewis B. Rome, Joseph B. Burns*, and *Jonathan J. Blake*, for the appellants (defendant Christopher Ida et al.).

*Peter D. Clark*, with whom was *Michael C. Deakin*, for the appellee (plaintiff).

*Matthew Shafner* and *Caitlin L. Hills*, law student intern, filed a brief for the Connecticut Trial Lawyers Association as amicus curiae.

*Patrice H. Kunesh, Elizabeth Conway* and *Mark R. Kravitz* filed a brief for the Mashantucket Pequot Tribe as amicus curiae.

*John C. Cruden,* acting assistant United States attorney general, pro hac vice, *Deborah R. Slater,* assistant United States attorney, and *John L. Smeltzer,* pro hac vice, filed a brief for the United States of America as amicus curiae.

*Opinion*

SULLIVAN, C. J. The issue presented in this appeal is whether the trial court has subject matter jurisdiction over an action brought to recover for a personal injury that allegedly occurred on land belonging to the Mohegan Tribe of Indians of Connecticut (tribe) when the action was brought by a patron who is not Indian against employees of the tribe and the Mohegan Tribal Gaming Authority (authority)[1] who are not Indian. The plaintiff, Louise E. Kizis, brought this negligence action against eight defendants[2] for injuries resulting from a

---

[1] The tribe created the authority to facilitate and act as the governmental entity responsible for managing all aspects of the tribe's gaming enterprises. This was accomplished under the authority of article XIII, § 1, of the Constitution of the Mohegan Tribe of Indians of Connecticut, which provides in relevant part: "Creation of Gaming Authority. All governmental and proprietary powers of The Mohegan Tribe over the development, construction, operation, promotion, financing, regulation and licensing of gaming, and any associated hotel, associated resort or associated entertainment facilities, on tribal lands (collectively, 'Gaming') shall be exercised by the Tribal Gaming Authority, provided that such powers shall be within the scope of authority delegated by the Tribal Council to the Tribal Gaming Authority under the ordinance establishing the Tribal Gaming Authority. . . ."

[2] Originally the plaintiff named five defendants in the complaint: (1) Morse Diesel International, Inc., the general contractor responsible for the construction of the Mohegan Sun Casino; (2) Manafort Brothers, Inc., the subcontractor responsible for the installation of the fieldstone at the Summer Entrance; (3) the Waterford Hotel Group, Inc., the developer of the Mohegan Sun Casino; (4) Frank Chapman, the director of facilities operations for the authority; and (5) Christopher Ida, building official for the tribe. The plaintiff later cited in as additional defendants: Edward D. Stone, Jr., and Associates, Inc.; Brennan Beer Gorman, Architects, P.C.; and Sun International Development Group, Inc.

fall at the Mohegan Sun Casino. Of the eight defendants, two individual defendants[3] moved to dismiss the action, asserting tribal sovereign immunity. The trial court denied the motion. Pursuant to Practice Book § 11-12,[4] the defendants moved for reargument on the motion to dismiss.[5] The court granted reargument and again denied the motion to dismiss on the same grounds. Relying on our decision in *Shay* v. *Rossi*, 253 Conn. 134, 164, 749 A.2d 1147 (2000),[6] the defendants appealed from the denial of the motion to dismiss, and we transferred the appeal from the Appellate Court to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c). The trial court did not address whether it had subject matter jurisdiction over this tort action. Hence, we ordered, sua sponte, that the parties file supplemental briefs addressing that issue. We reverse

[3] Throughout this opinion, we use the term "defendants" to refer only to the two individual defendants who filed this appeal, Christopher Ida and Frank Chapman, employees of the tribe and the authority, respectively.

[4] Practice Book § 11-12 provides in relevant part: "(a) A party who wishes to reargue a decision or order rendered by the court shall, within twenty days from the issuance of notice of the rendition of the decision or order, file a motion to reargue setting forth the decision or order which is the subject of the motion, the name of the judge who rendered it, and the specific grounds for reargument upon which the party relies.

"(b) The judge who rendered the decision or order may, upon motion of a party and a showing of good cause, extend the time for filing a motion to reargue. Such motion for extension must be filed before the expiration of the twenty day time period in subsection (a).

"(c) The motion to reargue shall be considered by the judge who rendered the decision or order. Such judge shall decide, without a hearing, whether the motion to reargue should be granted. If the judge grants the motion, the judge shall schedule the matter for hearing on the relief requested. . . ."

[5] The defendants based the motion for reargument on a contradictory Superior Court case released on the same day by Judge Koletsky in the Superior Court for the judicial district of New London at Norwich. See *Greenidge* v. *Volvo Car Finance, Inc.*, Superior Court, judicial district of New London at Norwich, Docket No. CV960119475S (August 25, 2000) (28 Conn. L. Rptr. 2).

[6] We ruled in *Shay* v. *Rossi*, supra, 253 Conn. 164, that the denial of a motion to dismiss based on sovereign immunity grounds is a final judgment for purposes of appeal.

the trial court's decision and order that the action be dismissed for lack of subject matter jurisdiction.

The plaintiff alleged that on August 13, 1998, she fell while entering the Mohegan Sun Casino, and she claimed that the fall was caused by a negligently placed fieldstone in an entrance walkway. Seeking to recover for injuries resulting from the fall, the plaintiff brought this action against the defendants in their capacity as employees of the tribe and the authority. She alleged negligence on their part in allowing a fieldstone to be placed in an entrance to the Mohegan Sun Casino. The defendants, the director of facilities operation employed by the authority and a building official employed by the tribe, moved to dismiss the action on the ground that they were protected from suit by the sovereign immunity of the tribe. The defendants claimed that they were being sued for actions undertaken in their official capacities as representatives of the authority and the tribe, both of which are sovereign entities entitled to immunity from suit. They further claimed that unless the tribe expressly had waived its sovereign immunity with regard to a legal action by the plaintiff, the plaintiff could not recover against the tribe or its officials and employees for actions taken by those individuals in their official capacities.

The plaintiff, in opposition to the motion to dismiss, argued that tribal immunity could be asserted only by the tribe itself and, therefore, was unavailable to the defendants in their capacity as employees. The trial court agreed with the plaintiff and denied the motion to dismiss, concluding that tribal immunity arises out of the tribe's status as a dependent domestic nation and, thus, belongs to the tribe itself and not to employees who are not tribe members and who are sued as

individuals.[7] Furthermore, the trial court held that the mere employment relationship of the defendants with the tribe or its entities did not grant them the right to assert the tribe's sovereign immunity.

We reverse the trial court's decision and order that the defendants' motion to dismiss be granted, albeit on different grounds. We conclude that the trial court did not have subject matter jurisdiction over the present action because the proper forum for relief is the Mohegan Gaming Disputes Court.

Because this motion to dismiss was denied on the sovereign immunity grounds raised by the defendants, we have the authority to hear the appeal. *Shay* v. *Rossi*, supra, 253 Conn. 164. A motion to dismiss shall be used to assert lack of jurisdiction over the subject matter, "essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Internal quotation marks omitted.) *Gurliacci* v. *Mayer*, 218 Conn. 531, 544, 590 A.2d 914 (1991). "[T]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss." (Internal quotation marks omitted.) *Antinerella* v. *Rioux*, 229 Conn. 479,

---

[7] Several cases have established that tribal sovereign immunity does not extend to individual members of a tribe and that the tribe itself must assert immunity. A state court does have the authority to adjudicate actions against tribal members when it properly obtains personal jurisdiction. See, e.g., *Puyallup Tribe, Inc.* v. *Washington Game Dept.*, 433 U.S. 165, 173, 97 S. Ct. 2616, 53 L. Ed. 2d 667 (1977); *United States* v. *James*, 980 F.2d 1314, 1319 (9th Cir. 1992), cert. denied, 510 U.S. 838, 114 S. Ct. 119, 126 L. Ed. 2d 84 (1993); *State* v. *Sebastian*, 243 Conn. 115, 160, 701 A.2d 13 (1997), cert. denied, 522 U.S. 1077, 118 S. Ct. 856, 139 L. Ed. 2d 756 (1998). "The doctrine of tribal immunity [however] extends to individual tribal officials acting in their representative capacity and within the scope of their authority." (Internal quotation marks omitted.) *Romanella* v. *Hayward*, 933 F. Sup. 163, 167 (D. Conn. 1996). The doctrine does not extend to tribal officials when acting outside their authority in violation of state law. See *Puyallup Tribe, Inc.* v. *Washington Game Dept.*, supra, 171–72.

489, 642 A.2d 699 (1994); *Martinez* v. *Dept. of Public Safety*, 258 Conn. 680, 683, 784 A.2d 347 (2001).

"It is a fundamental rule that a court may raise and review the issue of subject matter jurisdiction at any time. . . . Practice Book [§ 10-33] provides: Any claim of lack of jurisdiction over the subject matter cannot be waived; and whenever it is found after the suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.

"Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . . The objection of want of jurisdiction may be made at any time . . . [a]nd the court or tribunal may act on its own motion, and should do so when the lack of jurisdiction is called to its attention. . . . The requirement of subject matter jurisdiction cannot be waived by any party and can be raised at any stage in the proceedings. . . . If at any point, it becomes apparent to the court that such jurisdiction is lacking, the appeal must be dismissed." (Citations omitted; internal quotation marks omitted.) *Lewis* v. *Gaming Policy Board*, 224 Conn. 693, 698–99, 620 A.2d 780 (1993).

"Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers." *Santa Clara Pueblo* v. *Martinez*, 436 U.S. 49, 58, 98 S. Ct. 1670, 56 L. Ed. 2d 106 (1978); *Oklahoma Tax Commission* v. *Citizen Band, Potawatomi Indian Tribe*, 498 U.S. 505, 509, 111 S. Ct. 905, 112 L. Ed. 2d 1112 (1991); *United States* v. *United States Fidelity & Guaranty Co.*, 309 U.S. 506, 512, 60 S. Ct. 653, 84 L. Ed. 894 (1940). We begin with the premise that "Indian tribes are 'domestic dependent

nations' which exercise inherent sovereign authority over their members and territories." *Oklahoma Tax Commission* v. *Citizen Band, Potawatomi Indian Tribe*, supra, 509, citing *Cherokee Nation* v. *Georgia*, 30 U.S. (5 Pet.) 1, 17, 8 L. Ed. 25 (1831). Because Indian tribes possess this inherent sovereignty they are allowed to form "their own laws and be ruled by them." (Internal quotation marks omitted.) *White Mountain Apache Tribe* v. *Bracker*, 448 U.S. 136, 142, 100 S. Ct. 2578, 65 L. Ed. 2d 665 (1980). "Tribal powers of self-government . . . are observed and protected . . . to insure continued viability of Indian self-government insofar as governing powers have not been limited or extinguished. . . . The exercise of tribal governing power may . . . preempt state law in areas where, absent tribal legislation, state law might otherwise apply." (Internal quotation marks omitted.) *Schaghticoke Indians of Kent, Connecticut, Inc.* v. *Potter*, 217 Conn. 612, 628, 587 A.2d 139 (1991).

"Thus, in order for a state enactment to impinge on tribal sovereignty . . . the tribe must have a form of demonstrable sovereignty or functioning self-government. [And], the state act in question must actually infringe [upon the] exercise of tribal government or existing tribal legislation." Id., 629.

Consequently, "[a]s a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity"; *Kiowa Tribe of Oklahoma* v. *Manufacturing Technologies, Inc.*, 523 U.S. 751, 754, 118 S. Ct. 1700, 140 L. Ed. 2d 981 (1998); and the tribe itself has consented to suit in a specific forum. See *Santa Clara Pueblo* v. *Martinez*, supra, 436 U.S. 58. "Absent a clear and unequivocal waiver by the tribe or congressional abrogation, the doctrine of sovereign immunity bars suits for damages against a tribe." *Romanella* v. *Hayward*, 933 F. Sup.

163, 167 (D. Conn. 1996). "However, such waiver may not be implied, but must be expressed unequivocally." *McClendon* v. *United States*, 885 F.2d 627, 629 (9th Cir. 1989). Further, "[t]he doctrine of tribal immunity extends to individual tribal officials acting in their representative capacity and within the scope of their authority." (Internal quotation marks omitted.) *Romanella* v. *Hayward*, supra, 167.

We now examine the pertinent federal, state and tribal laws to determine whether the tribe has waived its sovereign immunity and, if so, in which forum. The Indian Gaming Regulatory Act (gaming act); 25 U.S.C. § 2701 et seq. (1994); regulates gaming operations on tribal land. The gaming act permits a recognized tribe to conduct "Class III" gaming only when the gaming operation is conducted in accordance with a gaming compact with a state and approved by the United States Secretary of the Interior. See 25 U.S.C. § 2710 (d) (1) (C)[8] and (8) (1994).[9] The tribe has been recognized by an act of Congress[10] and by the state of Connecticut.[11]

[8] Title 25 of the United States Code, § 2710 (d) (1994), provides in relevant part: "Class III gaming activities; authorization; revocation; Tribal-State compact

"(1) Class III gaming activities shall be lawful on Indian lands only if such activities are . . .

"(C) conducted in conformance with a Tribal-State compact entered into by the Indian tribe and the State under paragraph (3) that is in effect. . . ."

[9] Title 25 of the United States Code, § 2710 (d) (8) (A) (1994), provides: "The Secretary is authorized to approve any Tribal-State compact entered into between an Indian tribe and a State governing gaming on Indian lands of such Indian tribe."

[10] The United States recognized the tribe, as set forth in the Mohegan Nation of Connecticut Land Claims Settlement Act of 1994; 25 U.S.C. § 1775 et seq. (1994); which provides in relevant part: "Congress finds the following:

"(1) The Mohegan Tribe of Indians of Connecticut received recognition by the United States pursuant to the administrative process under part 83 of title 25 of the Code of Federal Regulations. . . ." 25 U.S.C. § 1775 (a); see also 59 Fed. Reg. 12,140 (March 15, 1994) (granting final determination recognizing Mohegan Tribe of Indians of Connecticut as Indian tribe).

[11] General Statutes § 47-59a (b) provides in relevant part: "The state of Connecticut further recognizes that the indigenous tribes . . . the Mohegan . . . are self-governing entities possessing powers and duties over tribal

In accordance with the gaming act, the tribe and the state of Connecticut entered into the Mohegan Tribe–State of Connecticut Gaming Compact (gaming compact), which governs gaming operations on the tribe's reservation. The gaming compact was approved by the Secretary of the Interior[12] and was incorporated by reference into federal law. See 25 U.S.C. § 1775 (1994). General Statutes § 47-65b allows "[t]he state of Connecticut [to assume] . . . civil regulatory jurisdiction pursuant to the May 17, 1994, Agreement and the May 17, 1994, Gaming Compact between the state of Connecticut and the Mohegan Tribe of Indians of Connecticut and Public Law 103-377."

Section 3 (g) of the gaming compact provides: "The Tribe shall establish, prior to the commencement of class III gaming, reasonable procedures for the disposition of tort claims arising from alleged injuries to patrons of its gaming facilities. The Tribe shall not be deemed to have waived its sovereign immunity from suit with respect to such claims by virtue of any provision of this Compact, but may adopt a remedial system analogous to that available for similar claims arising against the State or such other remedial system as may be appropriate following consultation with the State gaming agency."

Pursuant to its obligation under the gaming compact, the Mohegan Tribal Council established, in the Constitution of the Mohegan Tribe of Indians of Connecticut, a Gaming Disputes Court and a Gaming Disputes Court of Appeals. Mohegan Const., art. XIII, § 2. These courts have jurisdiction over disputes "arising out of or in

members and reservations. Such powers and duties include the power to: (1) Determine tribal membership and residency on reservation land; (2) determine the tribal form of government; (3) regulate trade and commerce on the reservation; (4) make contracts, and (5) determine tribal leadership in accordance with tribal practice and usage."

[12] See 59 Fed. Reg. 65,130 (December 16, 1994).

connection with" tribal gaming operations or the actions of the authority. Mohegan Const., art. XIII, § 2. The Mohegan constitution provides that "[t]he Tribal Council shall establish by ordinance, the Gaming Disputes Court, which shall be composed of a Trial Branch and an Appellate Branch. Exclusive jurisdiction for the Tribe over disputes arising out of or in connection with the Gaming, the actions of the Tribal Gaming Authority, or contracts entered into by The Mohegan Tribe or the Tribal Gaming Authority in connection with Gaming, including without limitation, disputes arising between any person or entity and the Tribal Gaming Authority, including customers, employees, or any gaming manager operating under a gaming management agreement with the Tribal Gaming Authority, or any person or entity which may be in privity with such persons or entities as to Gaming matters shall be vested in the Gaming Disputes Court. . . ." Mohegan Const., art. XIII, § 2. In addition, the tribe ordinance establishing the Gaming Disputes Court confers "exclusive original jurisdiction over all cases with respect to which the Tribe has conferred subject matter jurisdiction pursuant to Article XIII of the Mohegan Constitution." Ordinance No. 95-4 of the Mohegan Tribe of Indians of Conn., art. V, § 501.

The tribe enacted an ordinance[13] establishing the Mohegan Torts Code, which contains a limited waiver of the tribe's sovereign immunity so that the Gaming Disputes Court may adjudicate liability for "(1) [i]njuries proximately caused by the negligent acts or omissions of the Mohegan Tribal Gaming Authority; (2) [i]njuries proximately caused by the condition of any property of the Mohegan Tribal Gaming Authority pro-

---

[13] Before conducting a gaming operation, a tribe must also adopt a gaming ordinance and obtain approval for the ordinance from the National Indian Gaming Commission. See 25 U.S.C. § 2710 (d) (1) (A) (1994) and 25 C.F.R. § 522.1 et seq. (approval requirements).

vided the claimant establishes that the property was in a dangerous condition; [and] (3) [i]njuries caused by the negligent acts or omissions of tribal security officers arising out of the performance of their duties during the course and within the scope of their employment." Ordinance No. 98-1, An Ordinance Amending Ordinance 96-2 Establishing The Mohegan Torts Code, § 3 (c). The Mohegan Torts Code further provides that the ordinance does not immunize employees of the authority from individual liability, but that all disputes regarding employees that occur on the Mohegan "Gaming Enterprise Site shall be heard only in the Gaming Disputes Court."[14] Ordinance No. 98-1, supra, § 6.

We recognize that federal law may limit a tribal court's assertion of its own jurisdiction. See *Strate* v. *A-1 Contractors*, 520 U.S. 438, 442, 117 S. Ct. 1404, 137 L. Ed. 2d 661 (1997). Congress, however, only extended Connecticut criminal jurisdiction over the Mohegan Reservation. See Mohegan Nation of Connecticut Land Claims Settlement Act of 1994, 25 U.S.C. § 1775 et seq. (1994). Furthermore, the legislative history of the Mohegan Nation of Connecticut Land Claims Settlement Act discloses a Congressional intent that "[t]he Mohegan Indian Nation will retain exclusive civil jurisdiction within the boundaries of its reservation . . . ." H.R. Rep. No. 103-676, 103d Cong., 2d Sess. 9 (1994). Accordingly, in order for Connecticut to assume civil jurisdiction, the state must first obtain the consent of the affected tribe. See 25 U.S.C. §§ 1322, 1326 (1994). The tribe has not consented to state jurisdiction over

---

[14] Section 6 of the Mohegan Torts Code provides: "This ordinance does not immunize employees of the Mohegan Tribal Gaming Authority from individual liability for the full measure of the recovery applicable to a claimant if it is established that their conduct exceeded the scope of their employment or authority. Claims for individual liability arising out of conduct which is found to exceed the scope of employment and which arise on the Gaming Enterprise Site shall be heard only in the Gaming Disputes Court."

private actions involving matters that occurred on tribal land.[15] Indeed, in this instance, the statutes and compacts cited previously, which have been recognized by both the federal government and the state of Connecticut through compliance with the procedures set forth in the gaming act and the Indian Civil Rights Act,[16] explicitly place the present type of tort action in the jurisdiction of the tribe's Gaming Disputes Court. The tribe, as discussed previously, is a sovereign entity with the authority to create and enforce its own laws. The exercise of jurisdiction by state courts in this type of action would be in direct contradiction to the procedures established and consented to by the tribe after negotiation with the state of Connecticut and the federal government. Although Connecticut has a genuine interest in providing a judicial forum to victims of torts, the gaming act provided the state with a mechanism to negotiate with the tribe, to establish the manner in which to redress torts occurring in connection with casino operations on the tribe's land. As a result of these negotiations, the tribe maintained jurisdiction over tort actions of this type.

The two individual defendants being sued are employed by the tribe and the authority, and the alleged incident took place on the Gaming Enterprise Site. The Mohegan Torts Code together with the gaming compact and the Mohegan constitution provide a forum and mechanism to redress the plaintiff's injuries. Therefore, the Connecticut courts do not have subject matter jurisdiction over this claim. Accordingly, the Mohegan Gaming Disputes Court is the exclusive forum for the adjudication and settlement of tort claims against the tribe and its employees because it is the forum in which the sovereign has consented to being sued, as set forth

[15] See footnote 11 of this opinion.
[16] See 25 U.S.C. §§ 1322, 1326 (1994).

in Ordinance No. 98-1 amending the Mohegan Torts Code.

The decision of the trial court is reversed and the case is remanded with direction to grant the motion to dismiss and render judgment thereon.

In this opinion the other justices concurred.