# STATE OF CONNECTICUT *v.* RICHARD VELKY
## (SC 16863)

Sullivan, C. J., and Borden, Katz, Palmer and Zarella, Js.

Argued January 16—officially released May 20, 2003

*James W. Bergenn*, with whom were *Morgan P. Rueckert* and *Lee A. Duval*, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *Frank S. Maco*, state's attorney, and *Andrew M. Wittstein*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

SULLIVAN, C. J. Following a jury trial, the defendant, Richard Velky, was found guilty of criminal mischief in the third degree in violation of General Statutes § 53a-117[1] and breach of the peace in violation of General Statutes (Rev. to 1999) § 53a-181.[2] The trial court rendered judgment in accordance with the verdict. The defendant challenges these convictions on four grounds, one concerning subject matter jurisdiction,

---

[1] General Statutes § 53a-117 (a) provides: "A person is guilty of criminal mischief in the third degree when, having no reasonable ground to believe that he has a right to do so, he: (1) Intentionally or recklessly (A) damages tangible property of another, or (B) tampers with tangible property of another and thereby causes such property to be placed in danger of damage; or (2) damages tangible property of another by negligence involving the use of any potentially harmful or destructive force or substance, such as, but not limited to, fire, explosives, flood, avalanche, collapse of building, poison gas or radioactive material."

[2] General Statutes (Rev. to 1999) § 53a-181 (a) provides in relevant part: "A person is guilty of breach of the peace when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) Engages in fighting or in violent, tumultuous or threatening behavior in a public place; or (2) assaults or strikes another; or (3) threatens to commit any crime against another person or his property; or (4) publicly exhibits, distributes, posts up or advertises any offensive, indecent or abusive matter concerning any person; or (5) in a public place, uses abusive or obscene language or makes an obscene gesture; or (6) creates a public and hazardous or physically offensive condition by any act which he is not licensed or privileged to do; or (7) places a nonfunctional imitation of an explosive or incendiary device in a public place. . . ."

and three concerning the admission or exclusion of evidence. Although we conclude that the trial court had subject matter jurisdiction in the present case, we also conclude that the trial court improperly excluded evidence and that the exclusion was harmful. Accordingly, we reverse the judgment of the trial court and remand the case for a new trial.

The jury reasonably could have found the following facts. On October 7, 2000, the defendant's nephew, Terrence Manning, informed the defendant that property allegedly belonging to the Schaghticoke tribe, a tribe of Indians recognized by the state,[3] had been removed from a building referred to as the "pavilion" on the Schaghticoke reservation in Kent. Manning, the defendant, and James Velky, who is also the defendant's nephew, went to the pavilion and, upon their arrival, found that the door had been replaced with a steel door with a deadbolt lock and that the windows had been nailed and locked shut. The defendant and James Velky attempted forcibly to open the doors and windows. Karen Russell, who resides on the Schaghticoke reservation but is not a Schaghticoke Indian, also arrived and, using a disposable camera, began to take photographs of the two men trying to force open the doors and windows. The defendant knocked the camera from

[3] General Statutes § 47-59a provides in relevant part: "(b) The state of Connecticut further recognizes that the indigenous tribes, [including] the Schaghticoke . . . are self-governing entities possessing powers and duties over tribal members and reservations. Such powers and duties include the power to: (1) Determine tribal membership and residency on reservation land; (2) determine the tribal form of government; (3) regulate trade and commerce on the reservation; (4) make contracts, and (5) determine tribal leadership in accordance with tribal practice and usage."

General Statutes § 47-63 provides in relevant part: "The following terms as used in this chapter, shall have the following meanings: 'Indian' means a person who is a member of any of the following tribes . . . [including] Schaghticoke . . . 'reservation' means . . . [inter alia] the Schaghticoke reservation in the town of Kent, assigned to the Schaghticoke tribe . . . ."

her hand, stepped on it and broke it against the wall or railing of the pavilion.

Thereafter, the defendant was charged with one count each of criminal mischief in the third degree in violation of § 53a-117, breach of the peace in violation of § 53a-181, and disorderly conduct in violation of General Statutes § 53a-182. The jury returned a verdict of guilty on the charges of criminal mischief in the third degree and breach of the peace and not guilty on the charge of disorderly conduct. The trial court rendered judgment accordingly. The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. We reverse the judgment of the trial court.

I

The defendant first claims that the trial court lacked subject matter jurisdiction because of the sovereign status of the Schaghticoke tribe.[4] Specifically, the defendant contends that both tribal sovereignty and tribal sovereign immunity are jurisdictional bars.[5] We disagree.

"Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. . . . The question of whether

[4] Although the defendant concedes that he did not raise this issue at trial, lack of subject matter jurisdiction may be raised for the first time on appeal. *AvalonBay Communities, Inc.* v. *Orange*, 256 Conn. 557, 567 n.11, 775 A.2d 284 (2001).

[5] The primary distinction between the jurisdictional bars of tribal sovereignty and tribal sovereign immunity is that the latter may be invoked only by tribal officials who have acted within the scope of their authority; *Kizis* v. *Morse Diesel International, Inc.*, 260 Conn. 46, 51 n.7, 794 A.2d 498 (2002); while the former serves to prevent any activity that infringes on the sovereignty of a tribe and, thus, may be invoked by any member. *State* v. *Sebastian*, 243 Conn. 115, 160, 701 A.2d 13 (1997), cert. denied, 522 U.S. 1077, 118 S. Ct. 856, 139 L. Ed. 2d 756 (1998).

the court has such jurisdiction, however, must be informed by the established principle that every presumption is to be indulged in favor of jurisdiction." (Citations omitted; internal quotation marks omitted.) *State* v. *Carey*, 222 Conn. 299, 304–305, 610 A.2d 1147 (1992), on appeal after remand, 228 Conn. 487, 636 A.2d 840 (1994).

The defendant maintains that he is the duly elected chief of the Schaghticoke tribe. He further maintains that the tribe currently has two rival factions, one headed by the defendant and one headed by Alan Russell, who is married to the victim. The defendant does not dispute the state's assertion that, because his tribe is not recognized by the federal government, the state's authority to prosecute him is not preempted by federal law.[6] Similarly, he does not deny that, in general, state criminal laws of general applicability apply with full

---

[6] Although the exercise of state "jurisdiction over criminal offenses committed by or against Indians in the areas of Indian country situated within such State[s]" is conditioned on satisfaction of the requirements of §§ 1321 (a) and 1326 of title 25 of the United States Code, we previously have held that, because members of tribes that are not recognized by the federal government are not "Indians" as that term is used in that and other pertinent federal statutes, the state's exercise of criminal jurisdiction over members of tribes recognized only by the state is not preempted by federal law. *State* v. *Sebastian*, 243 Conn. 115, 127, 701 A.2d 13 (1997), cert. denied, 522 U.S. 1077, 118 S. Ct. 856, 139 L. Ed. 2d 756 (1998).

We acknowledge the tension between our holding in *Sebastian* and our holding in *Schaghticoke Indians of Kent, Connecticut, Inc.* v. *Potter*, 217 Conn. 612, 587 A.2d 139 (1991) (*Schaghticoke*). In *Schaghticoke* we considered whether the Schaghticoke reservation constitutes "Indian country" under 18 U.S.C. § 1162 and 28 U.S.C. § 1360 and, thus whether the exercise of *civil* jurisdiction over the tribe by the courts of this state might be preempted by federal law. Id., 617–18. In that case, we noted that "Indian country" is defined by 18 U.S.C. § 1151 (b) as including "all dependent Indian communities within the borders of the United States"; (internal quotation marks omitted) id., 618; and held that whether a reservation is a "dependent Indian communit[y]" under federal law depends on whether "(1) there is a bona fide tribe of Indians, and (2) the tribe has inhabited the land, has had 'Indian title' to it since 1790, and has maintained the same status and nature of its occupancy from 1790 to the time the cause of action arose." Id., 620.

force on the reservations of tribes that are recognized only by the state. Thus, we need not consider either of these issues.

The defendant asserts that, under the circumstances of this case, his prosecution constitutes an improper interference with the sovereignty of the Schaghticoke tribe. First, he contends in his brief that "the central factor in the case was the internal dispute over tribal self-government," and that, therefore, by prosecuting the defendant, "[t]he State . . . willingly inserted itself into a core tribal self-government dispute . . . in direct contravention of [this court's] mandate in *Golden Hill Paugussett Tribe of Indians* [v. *Southbury*, 231 Conn. 563, 575, 651 A.2d 1246 (1995)], that '[a]ny action by a state court that infringe[s] on tribal sovereignty or interfere[s] in tribal self-government [is] improper.'"

In support of this claim, the defendant maintains that the pavilion door and locks were replaced and the windows nailed shut by a rival Schaghticoke faction that contests his claim to be the rightful leader of the tribe. He maintains that the pavilion contains the office of the Schaghticoke tribal government and that his attempt to enter the building by force was an attempt to restore

Thus, we held in effect that whether the reservation is "Indian country" under pertinent federal statutes in no way depended upon any relationship between the tribe or its reservation and the federal government.

The incongruity in the possibility that people who are not "Indians" under 25 U.S.C. § 1321 (a) may nonetheless constitute a "dependent Indian communit[y]" under 18 U.S.C. § 1151 (b) is apparent. Nonetheless, we declined to reconsider the holding of *Schaghticoke* in *Sebastian*, because we found it unnecessary in light of our holding that the defendant in *Sebastian* was not an "Indian" under 25 U.S.C. § 1321 (a), and because *Sebastian* concerned criminal jurisdiction, while *Schaghticoke* had concerned civil jurisdiction. *State* v. *Sebastian*, supra, 243 Conn. 127–28 n.20, 129–30 n.23. Because we reiterate today that members of tribes not recognized by the federal government are not "Indians" within the meaning of 25 U.S.C. § 1321 (a), and that therefore the prosecution of those persons is not preempted by federal law, it is similarly unnecessary to reconsider the meaning of "Indian country" in the present case.

to the tribal government access to its own office. He notes further that the victim was the wife of the head of the rival faction, and he maintains that her photographing of his efforts to gain access to the office constituted an attempt to interfere with his efforts to restore access to that office. In summary, the defendant maintains that the incident for which he was convicted arose from a dispute between himself and a rival Schaghticoke faction concerning whether he was the rightful leader of the tribe, and that his prosecution was an improper state involvement in that dispute and, therefore, was an improper infringement upon the tribe's sovereignty.

This court consistently has held that, when the state has elected to recognize a particular tribe, "[a]ny action by a state court that infringed on tribal sovereignty or interfered in tribal self-government would . . . be improper." *Golden Hill Paugussett Tribe of Indians* v. *Southbury*, supra, 231 Conn. 575. Applying this standard to a criminal prosecution, we have stated that "[t]he question before us, therefore, is whether, in [permitting the prosecution of the defendant by the state], the trial court actually interfered with the exercise of tribal sovereignty." (Internal quotation marks omitted.) *State* v. *Sebastian*, 243 Conn. 115, 160, 701 A.2d 13 (1997), cert. denied, 522 U.S. 1077, 118 S. Ct. 856, 139 L. Ed. 2d 756 (1998).

In considering whether the trial court actually interfered with tribal sovereignty by permitting the defendant's prosecution in the present case, we note first the similarities between the present case and *Sebastian*. The defendant in *Sebastian* had been charged with breach of the peace for using his automobile to block a grader being used by employees of the town of North Stonington to widen a road. Id., 119. The defendant claimed that he was the vice-chairman of the Eastern Pequot tribe and a resident of the Paucatuck Eastern

Pequot reservation, that the town had no right to widen the road without tribal consent and that he had given the road crew a cease and desist order in his official capacity as tribal vice-chairman. Id., 119–20. For these reasons, he maintained that the state's prosecution of him constituted an undue infringement upon the sovereignty of his tribe. Id., 120.

We rejected the defendant's claim and concluded that the defendant's prosecution was not an improper infringement upon tribal sovereignty. We reasoned that, "[e]ven if we were to assume, arguendo, that the Paucatuck Eastern Pequot Tribe has retained its sovereignty over criminal matters, that inherent sovereignty is not implicated here because the Paucatuck Eastern Pequot Tribe does not seek to bring charges against the defendant, and it is not a party to this case. . . . Furthermore, the trial court made no finding with regard to the defendant's assertion that he holds the position of vice-chairman of the Eastern Pequot Tribe, and the defendant failed to seek any articulation from the trial court with regard to that claim. In fact, the record reflects an ongoing dispute regarding tribal membership and leadership. . . . Moreover, even if the defendant had established that he holds the position of tribal vice-chairman, it is unclear that that fact alone would have any bearing on his sovereignty claim. . . . Indeed, it is well established that tribal sovereign immunity does not extend to individual members of a tribe, and instead must be asserted by the tribe itself. . . . We conclude, therefore, that the defendant cannot assert a sovereignty claim on the basis of his membership in the Paucatuck Eastern Pequot Tribe." (Citations omitted; internal quotation marks omitted.) Id., 161–62. Similarly, in the present case, there is no evidence that the Schaghticoke tribe has sought to exercise criminal jurisdiction over the defendant, the tribe has not been charged with a crime and has not sought to intervene

in this case, and the defendant's claim to be a tribal leader is admittedly in dispute.[7]

In addition, several other considerations further suggest that tribal sovereignty is not infringed by the defendant's prosecution in this case. The basis on which the defendant maintains that the state's action interferes with the sovereignty of the Schaghticoke tribe is that the actions for which he was prosecuted were related to an internal dispute regarding the leadership of the tribe. Although § 47-59a[8] recognizes the right of tribes to select their own leaders, it does not provide that leadership disputes may be settled through means that violate state criminal statutes.[9] Furthermore, the application of criminal laws forbidding certain acts of property destruction or violence does not unduly limit the ability of the tribe to choose its own leaders. Moreover, the defendant's prosecution does not depend upon, or result in, a determination either by a jury or by any branch of state government that the defendant is or is not the rightful leader of the Schaghticoke tribe. For these reasons, the fact that the incident resulting in the defendant's prosecution arose from a tribal leadership

[7] We address the issue of tribal sovereign immunity later in this opinion.

[8] See footnote 3 of this opinion for the text of § 47-59a.

[9] Indeed, the legislature has provided a process by which leadership disputes may be resolved without violation of other statutes. General Statutes § 47-66i (b) provides: "A leadership dispute shall be resolved in accordance with tribal usage and practice. Upon request of a party to a dispute, the dispute may be settled by a council. Each party to the dispute shall appoint a member to the council and the parties shall jointly appoint one or two additional members provided the number of members of the council shall be an odd number. If the parties cannot agree on any joint appointment, the Governor shall appoint any such member who shall be a person knowledgeable in Indian affairs. The decision of the council shall be final on substantive issues. An appeal may be taken to the Superior Court to determine if provisions of the written description filed with the Secretary of the State pursuant to this section have been followed. If the court finds that the dispute was not resolved in accordance with the provisions of the written description, it shall remand the matter with instructions to reinstitute proceedings, in accordance with such provisions."

dispute did not deprive the trial court of criminal jurisdiction.

The second basis for the defendant's argument that the trial court lacked subject matter jurisdiction in the present case is that the acts with which he has been charged were done in his official capacity and pursuant to his authority as chief of a sovereign nation. The defendant maintains that, under *Kizis* v. *Morse Diesel International, Inc.*, 260 Conn. 46, 51 n.7, 794 A.2d 498 (2002), a tribal official is entitled to immunity from criminal prosecution for actions performed as part of his official duties and within the scope of his authority. In *Kizis*, we stated that "[t]he doctrine of tribal [sovereign] immunity . . . extends to individual tribal officials acting in their representative capacity and within the scope of their authority. . . . The doctrine does not extend to tribal officials when acting outside their authority in violation of state law." (Citation omitted; internal quotation marks omitted.) Id. Where applicable, tribal sovereign immunity, like tribal sovereignty, serves to bar a court's subject matter jurisdiction. Id., 51 ("[t]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss" [internal quotation marks omitted]).

*Kizis*, however, concerned a *federally* recognized tribe seeking to prevent the exercise of subject matter jurisdiction in a *civil* case. Id., 48. Even if it is assumed that sovereign immunity extends to tribes not recognized by the federal government, the defendant has cited no authority for the proposition that tribal sovereign immunity may be invoked by tribal officials in *criminal* trials. With regard to state sovereign immunity, we have noted that "because the state can act only through its officers and agents, a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state." (Internal

quotation marks omitted.) *Shay* v. *Rossi*, 253 Conn. 134, 168, 749 A.2d 1147 (2000). Sovereign immunity is not applicable in criminal cases, because, at least ordinarily, the charges are not brought "in effect" against the government.[10]

This conclusion is illustrated by the criteria that we have established "for determining whether the suit is, in effect, one against the state and cannot be maintained without its consent: (1) a state official has been sued; (2) the suit concerns some matter in which that official represents the state; (3) the state is the real party against whom relief is sought; and (4) the judgment, though nominally against the official, will operate to control the activities of the state or subject it to liability." (Internal quotation marks omitted.) *Spring* v. *Constantino*, 168 Conn. 563, 568, 362 A.2d 871 (1975). Even if we were to assume that the defendant is a Schaghticoke tribal official and that the incident leading to his arrest concerned some matter in which he represented the tribe, the third criterion is absent in the present case, because it is evident that the tribe is not the entity against which the judgment is to be executed. It is the defendant, and not the tribe, who stands convicted and who personally will be subject to criminal penalties. Similarly, with respect to the fourth criterion, the judgment operates to control not the tribe, but the defendant.

The defendant also argues that, in determining the extent to which tribal officials are immune from criminal prosecution in state courts, we should look to *In re Neagle*, 135 U.S. 1, 10 S. Ct. 658, 34 L. Ed. 55 (1890) (*Neagle*), in which the United States Supreme Court held that a state court could not exercise criminal jurisdiction over a federal marshal who shot and killed a

---

[10] Although not protected by sovereign immunity, defendants charged with crimes for acts done pursuant to their official duties as officers of the state may be able to assert a statutory defense of justification under General Statutes § 53a-17. See part II of this opinion.

man while protecting a justice of the United States Supreme Court. "*Neagle* established a two-part test for determining whether a state court has jurisdiction to prosecute a federal official for his conduct that is in violation of state law. Under *Neagle*, a state court has no jurisdiction if (1) the federal agent was performing an act which he was authorized to do by the law of the United States and (2) in performing that authorized act, the federal agent did no more than what was necessary and proper for him to do." (Internal quotation marks omitted.) *Whitehead* v. *Senkowski*, 943 F.2d 230, 234 (2d Cir. 1991).

The defendant asserts in his brief that he is "the duly elected leader of the Schaghticoke Tribal Nation, which, like the federal government, is a sovereign entity." The holding of *Neagle* that a state may not subject a federal officer to criminal jurisdiction for actions that the officer has done pursuant to his duties under federal law, however, was based upon the fact that, in areas in which it has authority, the federal government is supreme. *In re Neagle*, supra, 135 U.S. 61–62, citing *Tennessee* v. *Davis*, 100 U.S. 257, 262, 25 L. Ed. 648 (1879). Thus, the state may not, through the exercise of criminal jurisdiction or otherwise, prevent the execution of the laws of the United States. The defendant has pointed to no authority, however, indicating that the state is similarly bound to defer to the laws of tribes recognized only by the state itself. Therefore, the reasoning underlying the conclusion in *Neagle* does extend to Indian tribes.

We conclude that the defendant's prosecution was not an improper infringement upon or interference with tribal sovereignty or self-government, and that the doctrine of sovereign immunity did not bar the defendant's prosecution in the present case. Therefore, the trial court had jurisdiction to hear the case.

## II

In addition to challenging the trial court's subject matter jurisdiction, the defendant challenges three evidentiary rulings made by that court. First, the defendant claims that the court improperly excluded evidence of the dispute over tribal leadership and his alleged responsibilities as a tribal official that he asserts was relevant to a defense of justification under General Statutes § 53a-17[11] and to his state of mind under the statutes under which he was convicted. He further asserts that the court improperly excluded certain videotape evidence with which he had intended to impeach the testimony of the victim, and improperly admitted a statement made by him to police. Because we agree with the defendant that the trial court improperly excluded evidence of his state of mind, we do not reach his other two claims.

The defendant did not preserve for appeal his claim that the trial court improperly excluded evidence regarding the dispute over leadership of the Schaghticoke tribe and the defendant's alleged duties as chief. As the trial court subsequently noted in an articulation, however, in a pretrial conference in chambers, "the court [made] it clear that it would not turn this basically criminal mischief case into a tribal recognition hearing, an historical novel about the dealings of the individual native American combatants or a made for television messy divorce case." It is implicit in this ruling that the trial court would not permit the jury to consider evidence pertaining to the leadership dispute. Accordingly, although the defendant did not make an offer of proof when the court sustained the state's objections

[11] General Statutes § 53a-17 provides in relevant part: "Unless inconsistent with any provision of this chapter defining justifiable use of physical force, or with any other provision of law, conduct which would otherwise constitute an offense is justifiable when such conduct is required or authorized by a provision of law . . . ."

to his attempts to elicit the testimonial evidence at issue, "[i]t was . . . perfectly clear from the attitude of the court that [such an offer of proof] would have been futile. . . . Under the circumstances, [the defendant] was entitled to accept for the time being the rulings of the court in the expectation that he would assign them as error. The fact that he did accept those rulings . . . cannot reasonably be interpreted under the circumstances of this case as a waiver of any claim of error in the rulings." *State* v. *Higgs*, 143 Conn. 138, 145, 120 A.2d 152 (1956); see also *State* v. *Biller*, 190 Conn. 594, 620, 462 A.2d 987 (1983). Therefore, we will review the defendant's claim.

The defendant maintains that he was entitled to present evidence of the tribe's leadership dispute and his alleged responsibilities as a tribal official for two reasons. First, he asserts that the evidence was material and relevant to the defense of justification under § 53a-17, which provides in relevant part that "conduct which would otherwise constitute an offense is justifiable when such conduct is required or authorized by a provision of law . . . ." The defendant has failed to indicate, however, either to this court or to the trial court, under what provision of law his conduct might have been required or authorized. This omission is fatal to the defendant's claim, even if we were to assume that the "law" that may justify otherwise criminal conduct under § 53a-17 includes tribal law, and that the defendant is, in fact, a tribal official.

Although the defendant has failed to establish that he was entitled to present evidence of a defense of justification, we nonetheless conclude that the exclusion of evidence of the tribal dispute and the defendant's alleged duties as a tribal official was improper and harmful because it was relevant to the defendant's state of mind. Section 53a-117 (a) provides in relevant part that "[a] person is guilty of criminal mischief in the

third degree when, *having no reasonable ground to believe that he has a right to do so,* he: (1) Intentionally or recklessly (A) damages tangible property of another . . . ." (Emphasis added.) Under § 53a-181 (a), a person is guilty of breach of the peace only if he acts "with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof . . . ."

The evidence that the defendant sought to introduce was relevant to whether he *reasonably believed* that he is the chief of the Schaghticoke tribe, and therefore *reasonably believed* that he had the right to prevent interference with his reopening of the pavilion. This evidence also would have tended to show that his intent in damaging the victim's property was not to cause inconvenience, annoyance or alarm, but only to prevent interference with what he believed to be his rightful reopening of the pavilion. Therefore, the defendant was entitled to have this evidence considered by the jury so that the jury could determine if the state had proven beyond a reasonable doubt all elements of each offense with which he was charged.[12]

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other justices concurred.

---

[12] Although the trial court evidently was concerned with avoiding a side trial on the issue of whether the defendant was the rightful leader of the tribe, we note that the resolution of the leadership dispute was not required in order to determine the purely subjective questions of (1) whether the

defendant *reasonably believed* that he had the authority he claims, and (2) with what intent he smashed the victim's camera.