SHEILA I. BUZULIS & another[1] vs. MOHEGAN SUN CASINO[2] & others.[3]

No. 06-P-1638.

Worcester. June 4, 2007. - August 9, 2007.

Present: KANTROWITZ, GREEN, & KATZMANN, JJ.

*Governmental Immunity. Jurisdiction.*

Discussion of tribal sovereign immunity. [710]

A District Court judge properly dismissed a civil action brought against a casino located on an Indian reservation, where the Gaming Disputes Court of the Mohegan Tribe had exclusive subject matter jurisdiction over the action [710-711]; however, this court remanded the case to the District Court for a determination of the relationship to the casino of other defendants named in the action [711-712].

CIVIL ACTION commenced in the Worcester Division of the District Court Department on June 29, 2004.

A motion to dismiss was heard by *Dennis J. Brennan*, J.

*Bernard A. Kansky* for the plaintiffs.

*Andrew Houlding*, of Connecticut, for the defendants.

KANTROWITZ, J. The main issue to be decided is whether tribal sovereign immunity precludes the plaintiffs from bringing their claims in a court other than the Gaming Disputes Court and, if so, to which of the four defendants such immunity applies.

*Facts.* Shortly after midnight on July 7, 2002, plaintiff Sheila Buzulis, a Massachusetts resident, and her husband, Michael Buzulis, were about to leave the Mohegan Sun Casino (casino) in Uncasville, Connecticut. As Sheila was retrieving her coat from the coatroom, an unidentified female security guard, re-

---

[1] Michael J. Buzulis.

[2] Also known as Mohegan Tribal Gaming Authority, also known as the Mohegan Tribe.

[3] Mary Lou Hoopman, Risk Management, and Jane Doe.

ferred to as Jane Doe in the plaintiffs' amended complaint, responding to an emergency call, ran into her and knocked her down, allegedly causing her injury.

On or about July 15, 2002, a telephone call was placed on behalf of the plaintiffs to Mary Lou Hoopman, director of Risk Management, seeking information with respect to filing a personal injury claim against the casino. Hoopman, the plaintiffs claim, wilfully failed to inform them or their agent of the requirement that a party seeking compensation for personal injuries arising at the casino file, through counsel licensed to practice law in the Gaming Disputes Court, a claim in that court within nine months (270 days).[4]

On June 29, 2004, the plaintiffs commenced the present action against the defendants in District Court. On August 4, 2004, they served upon the defendants an amended complaint[5] along with discovery demands for each defendant, consisting of a first set of interrogatories, a request for production of documents, and a request for admissions to facts.

On August 23, 2004, the defendants filed a motion to dismiss for lack of subject matter jurisdiction[6] based on tribal sovereign immunity.[7] After hearing, a District Court judge allowed the defendants' motion. Consequently, the defendants never pro-

---

[4]The briefs of both parties indicate that the statute of limitations in the Gaming Disputes Court was 270 days or nine months. According to the Mohegan Tribe of Indians of Connecticut Code of Ordinances § 3-246(a), see http://municode.com/resources/gateway.asp?pid=13768&sid=7 (last visited August 8, 2007), however, "[a] civil action under this Code shall be brought by filing a complaint pursuant to the procedures set forth in this Code within one (1) calendar year of the accrual date." This discrepancy is not germane to the issue before us.

[5]The plaintiffs' complaint, as amended, alleged claims of negligence by Sheila Buzulis against the casino; deceit against the casino, Hoopman, and Risk Management; negligence, and wilful, wanton, and reckless conduct, and assault and battery against Jane Doe; and a loss of consortium claim by Michael Buzulis against all four defendants.

[6]A copy of the motion has not been included in the record appendix.

[7]The plaintiffs, having apparently not received the motion to dismiss until August 27, 2004, filed, on August 26, a motion for default judgment, which on September 1, was (improperly) endorsed by a clerk as allowed, pursuant to Mass.R.Civ.P. 55(a), 365 Mass. 822 (1974). Although the plaintiffs promptly moved for an assessment of damages, the District Court clerk's office, sua sponte, noted the clerical error in the entry of a default after a timely motion to dismiss had been filed, gave notice to the parties that the docket would be

vided any pretrial discovery. The plaintiffs then appealed to the Appellate Division, which concluded that the Gaming Disputes Court had exclusive subject matter jurisdiction to adjudicate the rights of the parties, and affirmed the dismissal of the complaint.

The plaintiffs appeal, claiming (1) that it was error for the judge to uphold the clerk's sua sponte removal of the default judgment against all four defendants; (2) entitlement to discovery; and (3) that it was error for the judge not to apply the Massachusetts Long Arm Statute, G. L. c. 223A, § 3.

*Immunity.* "Indian tribes are 'distinct, independent political communities, retaining their original natural rights' in matters of local self-government. . . . They have power to make their own substantive law in internal matters . . . and to enforce that law in their own forums." *Santa Clara Pueblo* v. *Martinez,* 436 U.S. 49, 55-56 (1978), quoting from *Worcester* v. *Georgia,* 31 U.S. 515, 559 (1832). "Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers." *Santa Clara Pueblo, supra* at 58. "As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity. . . . [T]ribal immunity is a matter of federal law and is not subject to diminution by the States." *Kiowa Tribe of Okla.* v. *Manufacturing Technologies, Inc.,* 523 U.S. 751, 754, 756 (1998). "It is settled that a waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.' " *Santa Clara Pueblo, supra* at 58, quoting from *United States* v. *Testan,* 424 U.S. 392, 399 (1976). "The issue of tribal sovereign immunity is jurisdictional in nature." *McClendon* v. *United States,* 885 F.2d 627, 629 (9th Cir. 1989).

*Mohegan Sun.* The Mohegan Tribe is recognized as an Indian tribe by both Congress, see Mohegan Nation of Connecticut Land Claims Settlement Act of 1994, 25 U.S.C. §§ 1775 et seq.

corrected, and scheduled a hearing on the motion to dismiss. The plaintiffs moved to strike the motion to dismiss, to reinstate the default, or for entry of a new default judgment against the defendants. Ultimately, after hearing, a District Court judge denied the plaintiffs' motions and ordered that the matter proceed to a hearing on the motion to dismiss. The plaintiffs argue that this was improper. We discern no error in the correction of the clerk's misstep, or in the rulings of the judge denying the plaintiffs' motions.

(2000), and the State of Connecticut, see Conn. Gen. Stat. § 47-59a(b) (2007). The Mohegan Tribe and the State of Connecticut signed a gaming compact on April 25, 1994,[8] authorizing the Mohegan Tribe to conduct gaming within the Mohegan Reservation, and further authorizing the Mohegan Tribe to establish procedures for the disposition of tort claims arising from alleged injuries to patrons of its gaming facilities. Under those procedures, "[t]he tribe shall not be deemed to have waived its sovereign immunity from suit with respect to such claims . . . but may adopt a remedial system analogous to that available for similar claims arising against the State . . . ." *Kizis* v. *Morse Diesel Intl., Inc.*, 260 Conn. 46, 55 (2002), quoting from Mohegan Tribe-State of Connecticut Gaming Compact § 3(g). Furthermore, under the Mohegan Tribe's Constitution, the Gaming Disputes Court has exclusive jurisdiction over disputes arising out of, or in conjunction with, gaming operations, "including[,] without limitation, disputes arising between any person or entity and the Tribal Gaming Authority, including customers, employees, or any gaming manager operating under a gaming management agreement with the Tribal Gaming Authority, or any person or entity which may be in privity with such persons or entities as to Gaming matters." Article XIII, § 2.

The District Court and Appellate Division judges were correct in concluding that the Gaming Disputes Court has exclusive subject matter jurisdiction over the action between the plaintiffs and the casino.[9]

*The other defendants*. Remaining is the question of the status

---

[8]Pursuant to the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701 et seq. (2000), a recognized Indian tribe may conduct gaming operations in accordance with a gaming compact entered into with a State and approved by the United States Secretary of the Interior. See 25 U.S.C. § 2710(d)(1)(C), (8)(A) (2000). The gaming compact between the Mohegan Tribe and the State of Connecticut was approved by the Secretary of the Interior, 59 Fed. Reg. 65,130 (1994), and incorporated by reference into Federal law. See 25 U.S.C. § 1775.

We note that the Federal Register states that the compact was executed on May 17, 1994.

[9]The plaintiffs argued that the casino waived sovereign immunity by actively advertising and directing its marketing in Massachusetts, from the residents of which it gained a substantial amount of its daily revenue. "[A] waiver of sovereign immunity cannot be inferred from [an Indian] Nation's engagement in commercial activity." *Federico* v. *Capital Gaming Intl., Inc.*, 888 F. Supp.

of the three other defendants, Hoopman, Risk Management, and Doe. While "[t]he doctrine of tribal immunity extends to individual tribal officials acting in their representative capacity and within the scope of their authority," *Kizis* v. *Morse Diesel Intl., Inc.*, 260 Conn. at 54, quoting from *Romanella* v. *Hayward*, 933 F. Supp. 163, 167 (D. Conn. 1996), there is no evidence in the record indicating the status of the three defendants in question.[10] As conceded by the defendants, we are thus constrained to remand this case back to the District Court to determine the nature of the relationship between the parties.[11] See *Ellis* v. *Allied Snow Plowing, Removal & Sanding Servs. Corp.*, 81 Conn. App. 110, 115-117 (2004) (although Indian tribe qualified for sovereign immunity, defendant it hired as independent contractor did not). Cf. *Vertentes* v. *Barletta Co.*, 392 Mass. 165, 168 (1984) ("Generally, an employer of an independent contractor is not liable for harm caused to another by an act or omission of the contractor or his employees").

*Conclusion.* The casino enjoys sovereign immunity and the suit against it was rightly dismissed. The proper forum for suit to be brought was the Gaming Disputes Court, within the applicable period established by the Mohegan Tribe. As there is nothing on the record, however, indicating the status of the remaining defendants in relation to the casino, the allowance of the motion to dismiss in regard to them was premature. As such, a remand is in order for a resolution of this aspect of the litigation.[12]

*So ordered.*

---

354, 356 (D.R.I. 1995), quoting from *Sac & Fox Nation* v. *Hanson*, 47 F.3d 1061, 1063 (10th Cir.), cert. denied sub nom. *Willingham* v. *Sac & Fox Nation*, 516 U.S. 810 (1995).

[10]At oral argument, counsel for the casino stated that two of the defendants were employees and that Risk Management was a segment of the Casino. The proper forum to establish this evidence is the trial court, not the appellate court.

[11]As the issue was not raised below, we need not address the rather dubious claim that either Hoopman or Risk Management had a duty to provide the plaintiffs with information regarding the procedure for filing a claim.

[12]We leave to the District Court on remand whether to allow limited discovery on this point.