NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-346

MATTHEW HANEY, trustee,[1]

vs.

MASHPEE WAMPANOAG INDIAN TRIBAL COUNCIL, INC., & another.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff appeals from a Superior Court judge's order dismissing his amended complaint. The central issue in this case is whether tribal sovereign immunity precludes the plaintiff from bringing his claims against the defendants in the Superior Court. Concluding that the defendants did not waive their sovereign immunity, the "immovable property doctrine" does not apply, and the plaintiff has no private right of action to enforce the State conservation regulations at issue here, we affirm the dismissal of the complaint.

1. Background. We draw the facts from those well-pleaded in the plaintiff's amended complaint. See Osborne-Trussell v.

_____

[1] Of the Gooseberry Island Trust.

[2] Mashpee Wampanoag Tribe.

Children's Hosp. Corp., 488 Mass. 248, 250 (2021).  The

defendants, Mashpee Wampanoag Indian Tribal Council, Inc., and

Mashpee Wampanoag Tribe, operated a commercial shellfishing

business off the shore of Cape Cod in Popponesset Bay.  Their

"aquaculture" was authorized by a shellfish propagation license

pursuant to G. L. c. 130, § 57.  The defendants' fishing racks

and cages regularly were located on the private tidelands of

nearby Gooseberry Island, which is owned by the plaintiff.  The

defendants also left piles of shells, trash, and other debris on

Gooseberry Island and its private tidelands.  The plaintiff

filed an action in the Superior Court alleging trespass, private

nuisance, and public nuisance, and requesting a declaratory

judgment defining the parties' rights related to the defendant's

use of the shellfish propagation license on the private

tidelands.  A Superior Court judge dismissed the complaint with

prejudice, on the ground that the plaintiff's claims were barred

by tribal sovereign immunity.  This appeal followed.

2.  Discussion.  a.  Standard of review.  "We review, de

novo, the judge's legal conclusions that sovereign immunity bars

the plaintiff['s] claims and was not waived."  Harrison v.

Massachusetts Bay Transp. Auth., 101 Mass. App. Ct. 659, 660

(2022).

b.  Implicit waiver.  "Suits against Indian tribes are

. . . barred by sovereign immunity absent a clear waiver by the

2

tribe or congressional abrogation" (citation omitted).[3]  Building Inspector & Zoning Officer of Aquinnah v. Wampanoag Aquinnah Shellfish Hatchery Corp., 443 Mass. 1, 12 (2004).  We disagree with the plaintiff's argument that the defendants waived their tribal sovereign immunity by applying for the shellfish propagation license and accepting the grant of rights to use Commonwealth lands and waters because "a waiver of sovereign immunity cannot be implied but must be unequivocally expressed" (quotations and citations omitted).  Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58 (1978).  See Furry v. Miccosukee Tribe of Indians of Florida, 685 F.3d 1224, 1234 (11th Cir. 2012) (no waiver of sovereign immunity from private tort actions where tribe applied for State liquor license).  Cf. Caddo Nation of Oklahoma v. Wichita & Affiliated Tribes, 786 Fed. Appx. 837, 840 n.4 (10th Cir. 2019) (waiver of sovereign immunity by accepting grant funding where language of agreement explicitly stated that tribe "consents to accept the jurisdiction of Federal Courts").  Nothing in the licensing statute here refers to sovereign

---

[3] The plaintiff agrees that the Wampanoags are a Federally recognized Indian tribe and have sovereign immunity.  Further, at least in the trial court, the plaintiff agreed that if the defendant tribe were immune, the claims against the defendant corporation would also fail; "if one goes the other goes with it."  To whatever extent a footnote in the plaintiff's appellate brief now suggests some material distinction between the two defendants, the argument is waived, and we refer to the defendants together as enjoying immunity.

immunity, see G. L. c. 130, § 57, and the plaintiff does not claim that the defendants executed an agreement that contained an express waiver.

Nor are we persuaded by the contention that the tribe implicitly waived sovereign immunity by participating in previous lawsuits with the plaintiff and other parties. See Rosebud Sioux Tribe v. A & P Steel, Inc., 874 F.2d 550, 552 (8th Cir. 1989) (tribe waives sovereign immunity by commencing lawsuit "arising out of the same transaction or occurrence which is the subject matter of . . . [the] suit" [citation omitted]); Cayuga Indian Nation of N.Y. v. Seneca County, 260 F.Supp.3d 290, 299 (W.D.N.Y 2017) ("where an Indian tribe seeks a declaration that a particular fact is true, . . . it necessarily waives its sovereign immunity as to a counterclaim seeking the exact opposite declaration"). We agree with the motion judge that the matters cited by the plaintiff did not arise out of the same transaction or raise the same legal issues as the present case, and therefore did not constitute a waiver of tribal sovereign immunity.[4]

---

[4] In the first matter, the plaintiff named the defendants in a suit that sought to vacate a decision by the Massachusetts Department of Environmental Protection denying his request to build a bridge to Gooseberry Island. In the second, the plaintiff intervened in the defendants' certiorari action seeking to vacate an order from the Mashpee Conservation Commission but was not permitted to file a counterclaim.

c. "Immovable property" exception. The plaintiff also contends that the defendants waived sovereign immunity by "hold[ing] property in the territory of another sovereign." Historically, under the immovable property exception, courts have treated land acquired by a sovereign State outside its territory as privately owned in the context of suits over various real property rights. See Georgia v. Chattanooga, 264 U.S. 472, 479-480 (1924) (sovereign immunity not extended to State that acquired and held land within borders of another State in suit involving property rights and eminent domain). However, the dispute in this case did not pertain to rights stemming from an ownership or other interest in real property. Instead, the plaintiff sought relief regarding the defendants' use of the property within the area covered by the shellfish propagation license. We thus are not persuaded by the plaintiff's argument that we should extend the immovable property exception to the defendants' tribal sovereign immunity, even if we could do so. See Buzulis v. Mohegan Sun Casino, 69 Mass. App. Ct. 708, 710 (2007) ("[T]ribal immunity is a matter of federal law and is not subject to diminution by the States" [citation omitted]). Moreover, the Supreme Court has declined to create a rule broadly extending the immovable property exception to tribal immunity. See Upper Skagit Indian Tribe v. Lundgren, 138 S. Ct. 1649, 1654 (2018) (in context of expanding

5

immovable property exception, determination of limits on tribal sovereign immunity is "a grave question" on which "restraint is the best use of discretion"). We agree with the defendants that the issue is not ours to decide in the first instance but must be left to Congress. See Building Inspector & Zoning Officer of Aquinnah, 443 Mass. at 12 ("[t]o abrogate tribal immunity, Congress must 'unequivocally' express that purpose" [citation omitted]).

d. Natural resource laws. We need not linger long on the plaintiff's argument that the grant of a shellfish propagation license "bound [the defendants] to operate the licensed area in a manner that does not impact the resources of other landowners." Even if the defendants are subject to the regulatory authority of the State regarding its natural resources, the plaintiff cites no legal authority for the proposition that a private citizen is permitted to file a civil lawsuit to enforce compliance. See Shepard v. Attorney Gen., 409 Mass. 398, 400 (1991) ("[T]he rights asserted by the [plaintiff] are not private but are in fact lodged in the

Commonwealth as it may proceed to enforce its laws" [citation omitted]).

                                               <u>Judgment affirmed</u>.

                                             By the Court (Sacks, Singh & Brennan, JJ.[5]),

                                             *Joseph F. Stanton*

                                             Clerk

Entered:  February 15, 2023.

---

[5] The panelists are listed in order of seniority.