NANCY ELLIS *v.* ALLIED SNOW PLOWING, REMOVAL
AND SANDING SERVICES CORPORATION ET AL.
(AC 23496)

Foti, Flynn and Peters, Js.

Argued November 17, 2003—officially released January 13, 2004

*Lorinda S. Coon,* with whom, on the brief, was *William J. Scully,* for the appellant (named defendant).

*Lori M. Comforti,* for the appellee (plaintiff).

*Opinion*

PETERS, J. The Mashantucket Pequot Tribal Nation is a Native American tribe that, because it has obtained federal recognition, has sovereign immunity from state court tort actions. See *Kiowa Tribe of Oklahoma* v. *Manufacturing Technologies, Inc.,* 523 U.S. 751, 754, 118 S. Ct. 1700, 140 L. Ed. 2d 981 (1998); *Kizis* v. *Morse Diesel International, Inc.,* 260 Conn. 46, 52–53, 794 A.2d 498 (2002); see also 25 U.S.C. § 1758; General Statutes § 47-59a. The issue in this case is whether the tribe's sovereign immunity entitles a general contractor to claim sovereign immunity from state court jurisdiction to hear a tort claim arising out of the contractor's alleged negligence in performing snow removal duties on tribally owned land. The trial court, concluding that it had jurisdiction to proceed, denied the general contractor's motion to dismiss. We agree.

The plaintiff, Nancy Ellis, filed an amended complaint against the defendant Allied Snow Plowing, Removal

and Sanding Services Corporation.[1] She alleged that the defendant's negligent failure to clear snow and ice from a tribally owned parking lot in Norwich had caused her to be injured when she fell while attempting to board a bus. The plaintiff was at the parking lot in the course of her employment as a bus driver for Entertainment Tours, Inc., a company engaged in bringing patrons to the tribe's casino.[2]

The defendant filed a motion to dismiss the plaintiff's complaint for lack of subject matter jurisdiction. The defendant asserted that the tribal court had exclusive jurisdiction to adjudicate the plaintiff's claim because (1) the defendant conducted its snow removal business as the tribe's agent, servant or employee and (2) the alleged incident had taken place on tribal land.

The trial court denied the defendant's motion to dismiss. The court emphasized that it was undisputed that (1) neither the plaintiff nor the defendant was a member of the tribe, (2) the parking lot, although on tribal land, was not on the reservation itself and (3) the action was not against the tribe itself.

The defendant has appealed to this court from the trial court's denial of its motion to dismiss.[3] Because an appeal from such a denial raises a question of law, our review of the defendant's appeal is plenary. *South-*

---

[1] The plaintiff's original complaint contained a count alleging liability on the part of the defendant Mashantucket Pequot Tribal Nation. She has not appealed from the dismissal of that count on the ground of tribal sovereign immunity. In this opinion, we refer to Allied Snow Plowing, Removal and Sanding Services Corporation as the defendant.

[2] Entertainment Tours, Inc., was permitted to intervene as a plaintiff to protect its interests under workers' compensation law. See General Statutes § 31-293.

[3] Although the denial of a motion to dismiss ordinarily is an interlocutory ruling that is not immediately appealable, the defendant's appeal is properly before us. The denial of a motion to dismiss based on a colorable claim of sovereign immunity triggers an immediate right to appeal. *Flanagan* v. *Blumenthal*, 265 Conn. 350, 352–53 n.4, 828 A.2d 572 (2003).

*ern New England Telephone Co.* v. *Dept. of Public Utility Control,* 64 Conn. App. 134, 137, 779 A.2d 817 (2001), appeal dismissed, 260 Conn. 180, 799 A.2d 294 (2002).

The defendant has proffered three arguments in favor of its claim to tribal sovereign immunity, two of which it raised at trial. As at trial, the defendant maintains that (1) the organic documents adopted by the tribe designate its tribal court as the exclusive forum for adjudication of claims of tortious misconduct and (2) the responsibilities that the defendant assumed for snow removal on behalf of the tribe confer upon it the status and immunity of an agent or a representative of the tribe. In addition, the defendant now asserts that the nondelegable duty of the tribe to maintain its property in a safe condition requires recourse to the tribal court to protect the tribe's economic interests.[4] We are not persuaded.

## I

## AVAILABILITY OF A TRIBAL FORUM

The defendant's first argument is a structural claim based on the existence of a tribal forum in which the plaintiff may pursue her personal injury claim. Because of the tribe's unequivocal waiver of its sovereign immunity in its own court, the defendant maintains that only the tribal court may hear the plaintiff's claim. We disagree.

The defendant relies heavily on our Supreme Court's recent articulation of tribal sovereign immunity in *Kizis* v. *Morse Diesel International, Inc.,* supra, 260 Conn. 46. In that case, as in this one, the question was whether nonmembers of a Native American tribe could assert the tribe's claim to sovereign immunity. The nonmembers were tribal employees whose allegedly tortious miscon-

---

[4] The parties agree that this case does not concern any issue of exhaustion of tribal court remedies.

duct had occurred on the reservation. The Supreme Court held that tribal immunity was available to them as "individual *tribal officials* acting in their representative capacity and within the scope of their authority." (Emphasis added; internal quotation marks omitted.) Id., 54. In arriving at this conclusion, the court enforced a provision in the applicable tribal laws that broadly described the jurisdiction of the tribal court to encompass "without limitation, disputes arising between any person or entity and the Tribal Gaming Authority, including customers, employees, or any gaming manager operating under a gaming management agreement with the Tribal Gaming Authority, or any person or entity which may be in privity with such persons or entities . . . ." (Internal quotation marks omitted.) Id., 56, citing Mohegan Const., art. XIII, § 2.

The defendant notes that, like the Mohegan Tribe described in *Kizis*, the Mashantucket Pequot Tribal Nation has established a tribal court with jurisdiction over "actions founded upon a tort of the Tribe or its agents, servants, or employees acting within the scope of their employment." Mashantucket Pequot Tribal Laws, tit. XII, c. 1, § 2 (a). According to the defendant, *Kizis* requires us to hold that the Mashantucket Pequot tribal court has *exclusive* jurisdiction over the plaintiff's tort action in this case. We disagree.

We are not persuaded that *Kizis* stands for the proposition that a properly authorized tribal court with broad tribal authority unfailingly ousts the Superior Court of jurisdiction to hear any case that is in any way related to tribal activities. It is instructive that the *Kizis* court cited *Strate* v. *A-1 Contractors*, 520 U.S. 438, 117 S. Ct. 1404, 137 L. Ed. 2d 661 (1997), in support of its decision. *Kizis* v. *Morse Diesel International, Inc.*, supra, 260 Conn. 57. In *Strate*, the issue was whether a nonmember of a tribe was entitled to pursue, in federal court, a personal injury claim arising out of a collision between

her automobile and a truck driven by a nonmember employee of a nonmember general contractor engaged in performing landscaping services for the tribe. *Strate v. A-1 Contractors*, supra, 443. The United States Supreme Court held that the District Court, rather than the tribal court, had jurisdiction to hear the case. It concluded that tribes generally *lack* civil authority over the tortious conduct of nonmembers of the tribe unless the underlying activity directly affects the tribe's political integrity, economic security, health or welfare. Id., 459. A "run of the mill" highway accident, the court held, did not manifest any such adverse impact. Id., 457.

It follows, as the trial court held in this case, that the tribal court does not have exclusive jurisdiction to adjudicate this "run of the mill" slip and fall accident. Although the plaintiff might have pursued her claim in the tribal court, she was not obligated to do so.[5]

## II

## THE DEFENDANT AS A TRIBAL OFFICIAL

The defendant also maintains that, because its responsibilities for snow removal arose out of its contract with the Mashantucket Pequot Tribal Nation, it is entitled to sovereign immunity as an agent or representative of the tribe. According to the defendant, it is entitled to the same immunity that *Kizis* afforded to the two tribal employees of the Mohegan Tribe. We disagree.

*Kizis* held that "[t]he doctrine of tribal immunity extends to individual tribal officials acting in their representative capacity and within the scope of their authority." (Internal quotation marks omitted.) *Kizis* v. *Morse Diesel International, Inc.*, supra, 260 Conn. 54. In *Kizis*,

---

[5] In the tribal court, the plaintiff would not have been entitled to a jury trial and would have had only a limited right to receive damages for pain and suffering. Mashantucket Pequot Tribal Laws, tit. XII, c. 1, § 2 (b) (4).

the tribal officials were two employees who allegedly had negligently placed fieldstone in an entranceway to the tribe's casino. In this case, the defendant allegedly had negligently allowed snow and ice to remain on the tribe's parking lot. In both cases, the defendant notes, a nonmember of a tribe raised a claim that tribal property was not being maintained safely.

The defendant's reliance on *Kizis* assumes that, for present purposes, there is an equivalence between tribal employees and general contractors, as long as both are acting on behalf of the tribe. This assumption is not well founded. Our case law establishes that there is a "fundamental distinction between an employee and an independent contractor [which] depends upon the existence or nonexistence of the *right to control* the means and methods of work." (Emphasis in original; internal quotation marks omitted.) *Hunte* v. *Blumenthal*, 238 Conn. 146, 154, 680 A.2d 1231 (1996).[6]

We agree with the plaintiff that the terms of the agreement between the defendant and the tribe demonstrate that the tribe did not reserve a right to control the defendant's performance of its snow removal services. The agreement unambiguously (1) describes the defendant as an independent contractor, (2) allocates to the defendant the sole responsibility for risks associated with the snow removal business, (3) makes the defendant "solely and exclusively responsible" for the payment of "damages . . . [for the] bodily injury . . .

[6] As a general rule, an employer is liable for the negligence of its agents but not the negligence of independent contractors. *Pelletier* v. *Sordoni/Skanska Construction Co.*, 264 Conn. 509, 517, 825 A.2d 72 (2003). "The explanation for [this rule] most commonly given is that, since the employer has no power of control over the manner in which the work is to be done by the contractor, it is to be regarded as the contractor's own enterprise, and [the contractor], rather than the employer, is the proper party to be charged with the responsibility of preventing the risk, and bearing and distributing it." 2 Restatement (Second), Torts § 409, comment (b), p. 370 (1965).

of any person . . . in connection with [the] Contractor's performance of its obligations" and (4) imposes the requirement for obtaining insurance on the defendant. It seems to us a fair reading of this agreement that the parties intended to create a wall of separation between the defendant's performance of its snow removal responsibilities and the contractual responsibilities of the tribe.

The defendant has not articulated any claim for status as a tribal official other than as an agent of the tribe. The defendant's agreement with the tribe, however, expressly assigned to the defendant, and not to the tribe, the responsibility of providing protection against slip and fall accidents on the tribal parking lot. Indeed, the defendant's relationship to the tribe more closely resembles that described in *Strate* v. *A-1 Contractors*, supra, 520 U.S. 438, in which a suit alleging negligence by an employee of a tribal general contractor was held to fall within the jurisdiction of the civil court rather than that of the tribal court. Id., 459.

In sum, we are persuaded that the defendant has not established any relationship between itself and the tribe that would support the defendant's claim to sovereign immunity. Without more, the defendant, a general contractor, does not qualify for the immunity afforded to a tribal official.

## III

## THE TRIBE'S NONDELEGABLE DUTY

The defendant's final argument focuses on that part of *Strate* v. *A-1 Contractors*, supra, 520 U.S. 438, that confers exclusive jurisdiction on tribal courts to adjudicate a dispute between nonmembers of a tribe if that dispute "has some direct effect on the political integrity, the economic security, or the health or welfare of the

tribe." (Internal quotation marks omitted.) Id., 457.[7] The defendant maintains that pursuit of the plaintiff's action in the Superior Court would have an adverse effect on the tribe's economic interest in the safe maintenance of tribal land. It bases this argument on the tribe's non-delegable duty to ensure the safety of tribally owned property.[8] We are not persuaded.

It is a given that, as a landowner, the tribe has a nondelegable duty to keep its properties safe. See *Gazo* v. *Stamford*, 255 Conn. 245, 252–53, 765 A.2d 505 (2001). As *Gazo* held, this nondelegable duty includes the responsibility to keep tribal properties free from snow and ice and thereby to protect third persons from injuries resulting from a slip and fall. Id. That, of course, is precisely the nature of the injuries described in the plaintiff's complaint.

Relying on the law of nondelegable duty, the defendant posits that holding it responsible for the plaintiff's slip and fall will have an adverse impact on the tribe's economic interest. It does not delineate the nature of that impact with any precision. Presumably, it arises out of the risk that the present litigation might adversely affect the tribe's ability to defend itself from a suit in tribal court alleging breach of the tribe's own duty to ensure the safety of tribal property.

It is undisputable that the tribe and the defendant each owed a duty to the plaintiff to clear the tribal parking lot of snow and ice in timely fashion. The tribe's breach of its duty is not a defense to an action for

---

[7] Although there is no evidence of record that this issue was ever raised in the trial court, it is an issue of law over which our jurisdiction is plenary. See *Ammirata* v. *Zoning Board of Appeals*, 264 Conn. 737, 744–45, 826 A.2d 170 (2003). The parties have briefed the merits of the defendant's argument. We will, therefore, address its merits.

[8] The agreement between the defendant and the tribe makes it clear that the tribe will not be economically at risk for any damages that the plaintiff may recover. The agreement has no indemnity provision.

breach of the defendant's duty. The defendant's breach of its duty is not a defense to the tribe. See id.

Under these circumstances, we cannot discern any way in which the plaintiff's action in the Superior Court could have a direct adverse effect on an economic interest of the tribe. If the plaintiff succeeds in obtaining a judgment against the defendant, her recovery in that forum would relieve the tribe of responsibility to the extent that the judgment is paid. In the event that the plaintiff pursued a claim against the tribe in tribal court, the tribe would be free to defend against such litigation in whatever manner it deemed appropriate. Because the tribe is no longer a party to the action against the defendant, it would not be bound by adverse findings of fact or rulings of law that may be made in this action.[9]

We are, therefore, unpersuaded that the tribe faces a serious risk of a direct adverse economic impact on tribal economic well being if the plaintiff proceeds with her action against the defendant in the Superior Court. With appropriate foresight, the tribe sought to *limit* its economic exposure by hiring the defendant to assume responsibility for slip and fall accidents on tribal parking lots. The significance of this limitation of liability far exceeds the remote possibility that the tribe will be unfairly burdened if the plaintiff chooses to pursue an action against the tribe in tribal court.

The trial court had subject matter jurisdiction to adjudicate the merits of the plaintiff's cause of action. It properly denied the defendant's motion to dismiss that action on the ground of tribal sovereign immunity.

The denial of the defendant's motion to dismiss is affirmed.

In this opinion the other judges concurred.

---

[9] For the applicable principles of claim preclusion and issue preclusion, see, e.g., *Cumberland Farms, Inc.* v. *Groton*, 262 Conn. 45, 57–58 n.16, 808 A.2d 1107 (2002); 1 Restatement (Second) Judgments §§ 24, 27 (1982).