1008

(272 P.3d 611)
No. 104,080

KATHY ANN BRADLEY, PATTI JUNE GIBBS, DEBRA LYNN WHITEBIRD, BARBARA JEAN WEAVER, and MORRILL AND JANES BANK AND TRUST COMPANY, HIAWATHA, KANSAS, CONSERVATOR OF RAYMOND C. SCHUETZ, *Appellees*, v. NANCY SUE BEAR, *Appellant*, and BRUCE BECHTOLD and JAY BECHTOLD, *Defendants*.

. Opinion filed January 20, 2012.

*Brian R. Johnson*, of Johnson Law Office, of Lawrence, for appellant Nancy Sue Bear.

*William R. McQuillan,* of Troy, for appellees Kathy Ann Bradley, Patti June Gibbs, and Barbara Jean Weaver.

Before ATCHESON, P.J., HILL and STANDRIDGE, JJ.

HILL, J.: Nancy Sue Bear claims the Brown County District Court did not have jurisdiction to dissolve the family partnership and then partition and order the sale of real estate that she and her family, all enrolled members of the Kickapoo Nation Tribe, had farmed on the Kickapoo Reservation. Indian tribes are domestic dependent nations that exercise inherent sovereign authority over their members and territories. Because all of the parties to their action are enrolled members of the Kickapoo Nation Tribe and all of the land is located within the Kickapoo Reservation, we hold that the tribal court is the proper forum for resolving this dispute. It is a matter of sovereignty. We reverse the judgments of the district court and remand the matter with directions to dismiss the case.

*The facts are undisputed.*

Kathy Ann Bradley, Patti June Gibbs, Debra Lynn Whitebird, Barbara Jean Weaver, Raymond C. Schuetz, and Nancy Sue Bear are the adult children of Robert and Geraldine Schuetz, now both deceased. At the time of their deaths, the Schuetzes owned the fee simple absolute title to several tracts of real estate all located within the Kickapoo Nation Indian Reservation. By conveyance and then descent proceedings filed in the Brown County District Court, the Schuetz children became owners of undivided interests in the real estate as tenants in common. The children operated the real estate under an oral partnership known as Schuetz Farms. The farming operations all took place on the real estate on the reservation. The Schuetz children are all members of the Kickapoo Indian Tribe.

Then, in 2002, all the Schuetz children, except Bear, asked the Brown County District Court to dissolve the partnership, order an accounting, and partition all of the partnership property. We will refer to the Schuetz children who filed the lawsuit as the Plaintiffs. Bear was opposed to this and was a named defendant. The Plaintiffs alleged that they and Bear had operated Schuetz Farms since 1992, but that there was no formal partnership agreement, only an

oral agreement. The Plaintiffs described the assets of Schuetz Farms as the real estate and some items of personal property. The Plaintiffs requested that the court (1) enter judgment against Bear for sums due to each plaintiff after an accounting of the partnership money and (2) partition the real and personal property of the partnership (or if partition could not be made, appraise, advertise, and sell the property). In response, Bear admitted the existence of the partnership but denied many of the allegations contained in the petition.

The district court granted the Plaintiffs a partition and appointed a panel of commissioners to partition the property at issue, with the proviso that the property would be sold at a sheriff's sale if it could not be partitioned. After examining the property, the commissioners determined that partition was impractical and could not be made without manifest injury to the property and interested parties. The commissioners therefore provided an appraisal value for each tract of real property and each piece of personal property. The commissioners' evaluation was approved by the district court. The district court ultimately ordered that the property be sold at a sheriff's sale. An advertisement was placed in the local newspaper notifying the public that a sale would take place on June 15, 2004.

For the first time, on June 15, 2004, Bear asked the district court to dismiss the case and cancel the sale of the partnership property, arguing the court lacked subject matter jurisdiction over the real estate. Bear claimed the Kansas Enabling Act excludes Indian land from the territorial boundaries and civil jurisdiction of the State of Kansas and noted that this property was indeed located on a reservation. Bear attached evidence of a temporary restraining order (in an unrelated case) enjoining the Brown County Sheriff from "serving process on lands federally recognized as the Reservation of the Kickapoo Tribe" because he lacked jurisdiction over the land. Despite Bear's motion, the partnership property was sold by the Brown County Sheriff on June 15, 2004. The Kickapoo Nation Tribe purchased some of the real property, while Bear purchased certain tracts; Bear purchased all the personal property that was sold.

*The controversy moves to a different court.*

The Plaintiffs thereafter asked the court to order the sheriff to deliver the deeds and bills of sale. Prior to a ruling on this request, Bear sued James A. Patton, the district court judge presiding over the matter, in federal court. The Brown County District Court stayed proceedings in the matter until a ruling could be made in the federal case.

In federal court, Bear asked that Judge Patton be enjoined from exercising jurisdiction over land located on the Kickapoo reservation. The federal district court granted Patton's motion to dismiss Bear's case, reasoning that the *"Rooker-Feldman* doctrine" precludes federal jurisdiction when a party who loses in state court seeks appellate review of a state court's judgment in federal court. The federal court explained that in Bear's federal complaint, she had asked for a declaratory judgment that her land was located within Kickapoo Territory and the Kansas district court therefore lacked jurisdiction to sell the land. The court explained that this request essentially asked the federal court to vacate a state court decision. The federal court decided it lacked subject matter jurisdiction. See *Bear v. Patton*, 364 F. Supp. 2d 1242, 1244-46, (D. Kan. 2005), *vacated and remanded* 451 F.3d 639, 640-43 (10th Cir. 2006); *Bear v. Patton*, No. 04-4081-JAR, 2007 WL 1424305, at *1-3 (D. Kan. 2007) (unpublished opinion).

Back in state court, Bear once again asked for relief from the court's judgment granting partition or, alternatively, dismissal of the case for lack of subject matter jurisdiction. Bear asserted the matter could not be determined by the Brown County District Court but must be decided in tribal court. On March 13, 2008, the district court held it had jurisdiction over the matter and that Bear's motion to dismiss must be denied. The court explained its reasoning.

The court first reasoned that the Brown County District Court would not undermine the authority of the Kickapoo Nation Tribe by exercising jurisdiction over the case. The court explained that the Kickapoo Nation Tribal Code does not address the creation and dissolution of partnerships or provide for the partition of prop-

erty, it does address corporations. The court noted that Kansas law *does* address the establishment and dissolution of partnerships and the partition of property. The court said that because the real estate, farming operation, and the parties in this case were located in Brown County, the Brown County District Court had jurisdiction over the case at hand unless it was precluded from exercising such jurisdiction because of tribal sovereignty.

The court next reasoned that because the real property at issue was subject to ad valorem taxation by law, the property *must* be subject to the state court's jurisdiction. The court then reasoned that it is sound public policy to keep real estate matters in state court, as the retention of real estate records in one location helps establish a "chain of title" and the "merchantability" of real estate.

On March 1, 2010, the district court ordered the partnership dissolved and ordered an accounting of partnership assets. That same day, the district court directed the closings of the sales.

Bear claims the Brown County District Court lacked subject matter jurisdiction to determine the case below and that the order for partition and sale of the real and personal property is therefore a null and void judgment. Bear argues the Kickapoo Nation Tribal Court has the proper jurisdiction to determine a tribe member's interests in real property located on the reservation.

*We give the legal context of our analysis.*

All questions arising in this appeal are questions of law. A court must be vested with subject matter jurisdiction in order for it to properly act in a case. *State v. Bickford,* 234 Kan. 507, 508-09, 672 P.2d 607 (1983). Subject matter jurisdiction is vested by statute and establishes the court's authority to hear and decide a particular type of case. *Kingsley v. Kansas Dept. of Revenue,* 288 Kan. 390, 395, 204 P.3d 562 (2009). Proceedings conducted or decisions made by a court are legally void when there is an absence of subject matter jurisdiction. *Bickford,* 234 Kan. at 509. A claim that the court lacks subject matter jurisdiction to hear a particular matter may be raised at any time. *Kingsley,* 288 Kan. at 395. Whether jurisdiction exists is a question of law over which this court exer-

cises unlimited review. *Diepenbrock v. Merkel*, 33 Kan. App. 2d 97, 98, 97 P.3d 1063 (2004).

*We review several Kickapoo laws and some cases on Indian law.*

Bear argues both the Kickapoo Nation Tribal Constitution and Kansas caselaw show that a state district court lacks jurisdiction to decide a civil matter between Indians involving a dispute over land located on the reservation. We review each source of authority in turn.

Article I of the Kickapoo Nation Tribal Constitution, approved on February 16, 1937, and amended on October 10, 1980, sets the jurisdiction:

"The jurisdiction of the Kickapoo Tribe shall extend to the territory within the confines of the Kickapoo Reservation as defined under the Treaty of May 18, 1854, and to such other lands as may be hereafter added thereto under any law of the United States."

Article V, § 1 (j) of the Tribal Constitution grants the Kickapoo Tribal Council the power to govern the conduct of Indians on the reservation and provides for the maintenance of law and order and the administration of justice by establishing courts on the reservation and defining their duties and powers.

In turn, the Kickapoo Nation Tribal Code of Civil Procedure states that the tribal court "may exercise jurisdiction over any person or subject matter on any basis consistent with" the Kickapoo Nation Tribal Constitution. Kickapoo Nation Tribal Code of Civil Procedure, Title VI, § 2. The Tribal Code further provides that in civil cases, the tribal court shall first apply the Kickapoo Nation Tribal Constitution, statutes, and common law; if there are none, the court shall apply federal law; if there is none, the court shall apply the law of *any* state or jurisdiction that the tribe finds compatible with the public policy and needs of the tribe. Title VI, § 11 (a). The Tribal Code states that when tribal law does not provide a specific procedure to resolve a case, *the court may proceed in any fashion not inconsistent with tribal law, the rules of the court, and the Indian Civil Rights Act.* Title VI, § 12.

We note also that the Tribal Code establishes the territorial jurisdiction of the tribal court extends to all territory defined in Ar-

ticle I of the Kickapoo Nation Tribal Constitution. Title IX, § 3. The Tribal Code provides that the tribal courts shall have general civil jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the Tribe and "over all general civil claims which arise within the Tribal jurisdiction." Title IX, § 4. Section 8 of Title IX states that if any dispute is not covered by the Kickapoo Nation Tribal Constitution, statutes, or common law, the court may apply the law of any state that would be cognizable in the courts of general jurisdiction. The Tribal Code also states that "every person, corporation, *partnership*, or incorporated association" has the capacity to sue or be sued in tribal court. (Emphasis added.) Title VI, § 301(b). Obviously then, partnerships are not totally ignored by Kickapoo law.

We turn now to some caselaw. In Kansas, this court dealt with a tribal court's jurisdiction over civil matters in *Diepenbrock*. The court first explained the unique position of Indians in contemporary society:

"'Indian tribes are "domestic dependent nations" that exercise inherent sovereign authority over their members and territories.' [Citations omitted.] Indian reservations are separate and distinct nations inside the boundaries of the state of Kansas. Indian rights are protected by treaty with the United States. [Citation omitted.] The inherent sovereignty possessed by Indian tribes allowed them to form 'their own laws and be ruled by them.' [Citation omitted.]" 33 Kan. App. 2d at 98-99.

Turning to the facts of the case, Diepenbrock, a patron of Harrah's Prairie Band Casino, suffered a heart attack while at the casino located on the reservation. Diepenbrock's widow, as the personal representative of Diepenbrock's estate, sued employees of the Potawatomi Tribal Emergency Services and Topeka Air Ambulance, Inc. for the wrongful death of her husband. The defendants moved to dismiss the suit for lack of subject matter jurisdiction, arguing the tribal court had exclusive jurisdiction over the case. The district court agreed and dismissed the case, reasoning the events occurred on tribal property.

On appeal, this court affirmed the district court's decision for three reasons. The court first reasoned that the most "critical fact" was that all events surrounding Diepenbrock's cause of action oc-

curred on tribal property, and the court indicated that the law recognizes a "preference for tribal sovereignty and jurisdiction or deference to the tribal court over matters concerning their members and their territories." 33 Kan. App. 2d at 103. The court next reasoned that accepting jurisdiction would undermine the authority of the tribal court and infringe upon its right to govern itself, noting Potawatomi Tribal law specifically provided for tribal jurisdiction in the situation. 33 Kan. App. 2d at 103-04. Specifically, the Potawatomi Law and Order Code provided that (1) the tribe had authority over all land within the reservation, (2) the tribal court had express jurisdiction over all persons located or doing business on the reservation, (3) the tribal court had jurisdiction over tort claims arising from injuries related to the gaming facilities, and (4) the tribal court had exclusive jurisdiction over civil matters and a determination as to whether the tribal court had jurisdiction would be conducted first in the tribal court. 33 Kan. App. 2d at 104. The court finally noted that a gaming compact between the Potawatomi Nation and State of Kansas provided that the tribe would be treated as if it were a state when it came to tort claims arising from injuries to patrons of the gaming facilities. 33 Kan. App. 2d at 104-05.

Other than *Diepenbrock*, which is distinguishable from this case for several reasons, Kansas case law provides little guidance on the question presented in this appeal. We therefore look to other jurisdictions, where the issue has been touched upon in the context of determining whether a court must give comity to another court's judgment.

In *Gesinger v. Gesinger*, 531 N.W.2d 17, 20 (S.D. 1995), the South Dakota Supreme Court held that a tribal court had both subject matter and personal jurisdiction over a civil action between a father and son because the dispute involved a " 'reservation affair.' " The court explained that the cattle in dispute were located on the reservation, the son was a member of the tribe living on the reservation, and the agreement regarding the cattle was executed on the reservation. 531 N.W.2d at 20. The *Gesinger* court relied in part on the holding in *Cropmate Co. v. Indian Resources Intern. Inc.*, 840 F. Supp. 744, 747 (D. Mont. 1993), where the court stated

that tribal courts are appropriate forums for the exclusive adjudication of disputes over transactions taking place within the boundaries of a reservation.

In *Red Fox v. Hettich*, 494 N.W.2d 638, 642 (S.D. 1993), the South Dakota Supreme Court stated that whether a tribal court has judicial jurisdiction depends on whether it has subject matter, personal, and territorial jurisdiction over a matter. The court explained that the tribe's Constitution and Code confer subject matter jurisdiction upon a tribal court. 494 N.W.2d at 643-44. The court ultimately determined that the tribal court lacked territorial jurisdiction to adjudicate a tort between an Indian and non-Indian in part because the tribal court lacked authority to regulate the tortious activities of non-Indians on state highways. 494 N.W.2d at 646-47.

Then in *Nielsen v. Brocksmith Land & Livestock, Inc.*, 321 Mont. 37, 40-42, 88 P.3d 1269 (2004), where the tribal court had already asserted jurisdiction over a land dispute, the court rejected the claim that the state district court had proper jurisdiction, noting the purchase agreement at issue involved members of the tribe and the real and personal property at issue were located on the reservation. Along the same line, the court in *Francis v. Dana-Cummings*, 962 A.2d 944, 948-49 (Me. 2008), held a civil dispute involved " 'internal tribal matters' " and the district court was therefore barred from considering the dispute where parties were tribe members and the property involved in the dispute was located on the reservation and owned by the tribe. In that case, the court held the actions that led to the dispute occurred on the reservation and involved tribe members, and the tribal court provided a forum and remedies to redress any alleged violation of rights. The dispute could be resolved without parties outside the reservation community, and resolution of the dispute required the interpretation and application of tribal law. See 321 Mont. at 40-44.

All of these rulings push us to the conclusion that the Kickapoo Tribal Court is the proper court to resolve this dispute between Indians about business performed on the reservation and land located on the reservation. Most important here is that all of the parties are enrolled members of the Kickapoo Tribe, all of the land

is located within the Kickapoo Reservation, and all of the farming partnership activities took place on the reservation. If this court is to uphold the concept of sovereignty, then the tribal court must be presumed to have the jurisdiction to resolve this dispute, not the state district court. Otherwise, the state court proceeding would rob the tribal court of its sovereignty.

*We examine the district court's ruling.*

A fair reading of the district court's opinion reveals the court's primary reason for concluding it had jurisdiction over this case was that the Kickapoo Nation Tribal Code does not address (1) the creation and dissolution of partnerships and (2) partition proceedings. In other words, since the Tribal Code had no specific laws on the point, the tribal court had no jurisdiction to decide the case. We therefore look to the Kickapoo Nation Tribal Code for guidance.

The district court noted that while the Kickapoo Nation Tribal Code does deal with corporations, it does not address the creation and dissolution of partnerships and does not address partition proceedings. We find this reasoning flawed because it disregards other provisions of the Kickapoo Nation Tribal Constitution and Tribal Code that indicate the tribal court has jurisdiction over civil matters involving tribe members and property located on the reservation. Specifically, the Tribal Code provides that even if there is no tribal law that governs the particular legal issue before the tribal court, compatible state law may be applied to resolve the issue if it so chooses. The tribal court can merely follow the Kansas law dealing with the dissolution of partnerships and partition if the tribal court found it compatible. That is the judgment the tribal court must make, not the state court. Clearly this is an issue of sovereignty.

We move now to the two remaining reasons the district court gave for ruling on this case instead of deferring to the tribal court. The district court reasoned that (1) the real property was subject to state ad valorem taxation, so must be subject to the jurisdiction of the state district court, and (2) it is sound public policy to keep real estate matters in state court because the retention of records

in one location helps establish a chain of title and the merchantability of real estate. We will look at each in turn.

First, if land on the reservation is owned in fee simple, that is to say, the land is freely alienable, a state may impose ad valorem taxes upon that real property. See *In re Tax Grievance Application of Kaul*, 269 Kan. 181, Syl. ¶ 7, 4 P.3d 1170 (2000). Even so, there is no connection between the State's ability to tax a particular piece of real property and the State's subject matter jurisdiction over civil matters that arise from that property. Factors such as whether the parties involved in the dispute are members of the tribe and whether the dispute arose from activities occurring on the reservation, for example, are pertinent for determining jurisdiction. Subject matter jurisdiction is created by statute, not by inference.

Second, the idea that all real estate matters should be determined in state court for record-keeping purposes completely contradicts the long-standing principle that Indian tribes are sovereign nations that exercise sovereign authority over their members and territories. It would be contrary to both law and public policy to conclude that state courts have jurisdiction over all disputes involving real estate regardless of whether the property belongs to the tribe or is located on the reservation. A state court cannot confer jurisdiction upon itself for public policy reasons. "Subject matter jurisdiction is vested by statute and establishes the court's authority to hear and decide a particular type of action. [Citation omitted.] Parties cannot confer subject matter jurisdiction by consent, waiver, or estoppel, nor can parties convey jurisdiction on a court by failing to object to its lack of jurisdiction. [Citation omitted.]" *Bruch v. Kansas Dept. of Revenue*, 282 Kan. 764, 773-74, 148 P.3d 538 (2006).

*We examine two matters raised by the Plaintiffs.*

On appeal, the Plaintiffs argue this court may not set aside the sale of real property to the Kickapoo Nation Tribe due to Kickapoo Nation Tribal Code, Title IX, § 4(e). The Plaintiffs claim this section of the Tribal Code provides:

"Effective for all land that has been or is purchased by the Tribe, exclusive tribal civil jurisdiction under this Section 4 shall not be applied so as to set aside

or redetermine an otherwise bona fide sale of land to the Tribe under a sale by a non-tribal governmental entity or official." Title IX, § 4(e).

The record on appeal indeed shows that the Kickapoo Nation Tribe purchased three tracts of the real property sold at the sheriff's sale and there has been no allegation (or evidence in this record) that the sale was not a bona fide sale. Nevertheless, this court cannot consider the application of Title IX, § 4(e) for three reasons.

First, the district court did not rely upon Title IX, § 4(e) when reaching its decision. Second, the Plaintiffs have not provided this court with a copy of this provision of the Tribal Code—although they erroneously claim the copy is attached to their appellate brief. Third, the copy of Title IX, § 4(e) this court was able to obtain does not contain the language cited by the Plaintiffs. The Plaintiffs have failed to persuade us that their quotation is accurate.

Next, the Plaintiffs claim the Kickapoo Tribal Court relied upon Title IX, § 4(e) when dismissing Bear's case in tribal court. The record contains no evidence of any tribal court proceeding, and the Plaintiffs have failed to provide an appropriate citation that would permit this court to obtain that record. In *National Bank of Andover v. Kansas Bankers Surety Co.*, 290 Kan. 247, Syl. ¶ 19, 225 P.3d 707 (2010), our Supreme Court noted that any material factual statement made without being keyed to the record on appeal by volume and page number may be presumed to be without support in the record.

Going deeper into the matter, even if the tribal court had ruled as the Plaintiffs claim, that does not confer subject matter jurisdiction on the state court. We hold the district court erred in determining that the Brown County District Court, as opposed to the Kickapoo Tribal Court, had jurisdiction over a civil dispute between Indians that involved a partnership operated and located on the reservation.

Reversed and remanded to the district court with directions to dismiss the prior proceedings (dissolution of partnership, partition and sale of property) for lack of jurisdiction.