## SCHAGHTICOKE INDIAN TRIBE ET AL. *v.* MICHAEL J. ROST
### (AC 33374)

Lavine, Robinson and Flynn, Js.

Argued April 12—officially released September 18, 2012

*Michael J. Rost*, pro se, the appellant (defendant).

*Hugh J. Lavery*, for the appellee (plaintiff Schaghticoke Indian Tribe).

*Dennis L. Kern*, for the appellee (plaintiff Schaghticoke Tribal Nation).

*Opinion*

ROBINSON, J. The self-represented defendant in this summary process eviction action, Michael J. Rost, appeals from the trial court's judgment of possession rendered in favor of the plaintiffs, the Schaghticoke Indian Tribe (SIT) and the Schaghticoke Tribal Nation (STN). The defendant claims that the court improperly

(1) exercised jurisdiction by adjudicating a summary process action involving sovereign reservation land, (2) decided a dispute over tribal leadership, (3) rendered judgment without one of the plaintiffs being represented at the summary process trial and (4) ignored prior judicial decisions impacting STN's authority to represent the interests of the Schaghticoke Indians. We affirm the judgment of the trial court.

The following facts, which either are undisputed on the basis of the record or were found by the court, and procedural history are relevant to our review of the claims on appeal. The Schaghticoke tribe is recognized by the state as a self-governing entity that possesses the power to, inter alia, "[d]etermine tribal membership and residency on reservation land . . . ." General Statutes § 47-59a (b) (1).[1] The Schaghticoke Indian reservation (reservation) is comprised of approximately four hundred acres of property located in Kent. For at least two years prior to the commencement of this summary process action, the defendant lived on the reservation with the permission of Gayle Donovan, a recognized Schaghticoke Indian, at her personal residence located at 262 Schaghticoke Road. Donovan had been given

---

[1] General Statutes § 47-59a, titled "Connecticut Indians; citizenship, civil rights, land rights," provides: "(a) It is hereby declared the policy of the state of Connecticut to recognize that all resident Indians of qualified Connecticut tribes are considered to be full citizens of the state and they are hereby granted all the rights and privileges afforded by law, that all of Connecticut's citizens enjoy. It is further recognized that said Indians have certain special rights to tribal lands as may have been set forth by treaty or other agreements.

"(b) The state of Connecticut further recognizes that the indigenous tribes, the Schaghticoke, the Paucatuck Eastern Pequot, the Mashantucket Pequot, the Mohegan and the Golden Hill Paugussett are self-governing entities possessing powers and duties over tribal members and reservations. Such powers and duties include the power to: (1) Determine tribal membership and residency on reservation land; (2) determine the tribal form of government; (3) regulate trade and commerce on the reservation; (4) make contracts, and (5) determine tribal leadership in accordance with tribal practice and usage."

permission to build her residence on the reservation more than twenty years earlier. Donovan owns and is responsible for the residence, but she does not own the land.

On June 30, 2010, the plaintiffs jointly served the defendant with a notice to quit possession of "the [e]ntire Schaghticoke [r]eservation (including but not limited to) Schaghticoke Road, Kent, CT" by July 27, 2010, on the ground that he had "[n]o right or privilege to occupy same." On August 4, 2010, the plaintiffs commenced this summary process action. Initially, both plaintiffs were represented by Attorney Paul Garlasco. The plaintiffs alleged in their complaint that they "own and possess" the reservation and that the defendant entered the reservation with no right or privilege to occupy or remain on the reservation. The plaintiffs further alleged that the defendant had failed to quit possession, and, therefore, they sought a judgment of "[e]xclusive [p]ossession of the reservation with an order of no re-entry" and "[a]n immediate execution of eviction of the [defendant]." The defendant filed an appearance and an answer to the complaint, in which he challenged the plaintiffs' authority to evict him from the reservation. Specifically, he stated that the plaintiffs do not represent the historic tribe as evidenced by copies of documents that he attached to his answer and which allegedly were on file with the secretary of the state of Connecticut and with the Interior Board of Indian Appeals.

The matter initially was assigned for a pretrial hearing on October 22, 2010. On October 6, 2010, Garlasco filed a motion to withdraw as counsel for the plaintiffs, alleging a breakdown in the attorney-client relationship. Following a hearing, the court granted the motion to withdraw. The court also granted several continuances to allow the plaintiffs an opportunity to obtain new counsel. On January 27, 2011, the court issued notice

to all parties that a summary process trial would be held on March 15, 2011. On March 14, 2011, Attorney Dennis L. Kern filed an appearance on behalf of STN only. The summary process trial went forward as scheduled on March 15, 2011. Kern and the defendant were present and each presented evidence; however, no one representing SIT appeared at the summary process trial. The court indicated at the close of the proceedings that it would continue the matter to April 15, 2011, at which time it would render a final decision.

On April 15, 2011, Attorney Hugh J. Lavery filed an appearance on behalf of SIT and also filed a motion asking the court to open the evidentiary portion of the trial to allow SIT an opportunity to present additional testimony or to declare a mistrial.[2] The court denied the motion to present evidence on the ground that the motion was procedurally irregular and that the proffered evidence concerned only the ongoing dispute between SIT and STN over tribal leadership, which the court found was immaterial to the summary process matter before it. The court next issued a written decision in which it found that the plaintiffs had met their burden as to all elements of the summary process complaint and rendered a judgment of possession in favor of the plaintiffs subject to any statutory stays. In reaching its decision, the court made the following specific finding: "Based on the evidence submitted by both parties, the court finds that [STN], through its [t]ribal

---

[2] According to the motion, Alan Russell, the tribal chairman of SIT, filed an appearance in November, 2010, purporting to be on behalf of SIT, which appearance allegedly was rejected by the clerk's office because, as a nonattorney, Russell could not appear on behalf of SIT. SIT further alleged in its motion that Russell never received notice that his appearance had been rejected or of the date of the summary process trial. The record does not contain evidence of Russell's rejected appearance, although the court indicated on the record that the appearance was never properly filed. The record indicates that notice of the summary process trial was sent to SIT at the address on file with the court.

[c]ouncil, is the governing authority for the Schaghti-coke tribe." The defendant filed the present appeal on April 20, 2011.

After the appeal was filed, SIT filed a motion to open the judgment. SIT argued that it wrongly had been deprived of an opportunity to present evidence that would have shown that SIT, and not STN, is the true governing authority for the Schaghticoke Indians. SIT was concerned about the res judicata effect of the court's finding that STN was the governing authority for the Schaghticoke Indians. SIT, nonetheless, also made clear that, despite the ongoing dispute between SIT and STN over which entity governs the Schaghti-coke Indians, the entities continued to be united in their goal to remove the defendant from the reservation and had alleged in their complaint that they collectively own and possess the reservation. According to SIT, under a theory of judicial restraint, the court could reach a decision in which it finds the allegation of the summary process complaint proven without selecting a winner of the governing dispute.

The court heard argument on the motion to open on May 9, 2011, following which it denied the motion. The court reasoned, as it previously had, that the issue of which entity was "in charge" was not properly before it, and, therefore, it did not need to hear additional evidence on that topic from SIT. The court nevertheless opened its decision for the purpose of vacating its ear-lier finding that STN, through its tribal council, was the recognized tribal leader. It clarified that the plaintiffs collectively represented the individual members of the Schaghticoke Indians, and that it was those "individuals that have brought this summary process action, and have moved to evict [defendant]." The defendant did

not amend his existing appeal to challenge the court's modification of its earlier decision.[3]

I

The defendant first claims that the court improperly exercised jurisdiction in adjudicating the present summary process action. We note at the outset that the defendant's brief contains little in the way of legal analysis and is, at times, disjointed and difficult to comprehend. Nevertheless, given the stated policy of Connecticut's courts to be solicitous of self-represented litigants; see *State* v. *Adams*, 117 Conn. App. 747, 755, 982 A.2d 187 (2009); and because the defendant challenges the court's exercise of both personal and subject matter jurisdiction in this matter, over which our review is plenary; see *Ryan* v. *Cerullo*, 282 Conn. 109, 118, 918 A.2d 867 (2007); *Pritchard* v. *Pritchard*, 281 Conn. 262, 270, 914 A.2d 1025 (2007); we will endeavor to review the defendant's claims despite the state of the briefing provided. We construe the defendant's jurisdictional argument to be twofold. First, he argues that, because the reservation constitutes sovereign land and the Schaghticoke Indians never entered into any agreement or contract with the state, it is not subject to the civil jurisdiction of Connecticut's courts. The defendant also argues that the court lacked personal jurisdiction over him because he is a "sovereign human being" and "common law free man." We conclude that the court properly exercised jurisdiction in this matter.

A

We first dispose of the defendant's claim that the court lacked personal jurisdiction over him as a "sovereign human being" and "common law free man." The defendant fails to explain in his brief the legal import of

---

[3] SIT filed an appeal from the court's denial of its motion to open, but that appeal was dismissed on a nisi order on July 5, 2011, after SIT failed to comply fully with Practice Book § 64-1.

his numerous assertions that he is a "sovereign human being" and "common law free man." We can discern no legal reason why the mere donning of such a mantle would act to defeat the court's exercise of personal jurisdiction over him in this matter. Nevertheless, it is unnecessary for us to delve further into the defendant's personal jurisdiction claim because we conclude that the defendant has waived his right to challenge personal jurisdiction.

"As a general matter, a party waives the right to dispute personal jurisdiction unless that party files a motion to dismiss within thirty days of the filing of an appearance. . . . Personal jurisdiction is not like subject matter jurisdiction, which can be raised at any time and by the court on its own motion. . . . Unless the issue of personal jurisdiction is raised by a timely motion to dismiss, any challenge to the court's personal jurisdiction over the defendant is lost. . . . As noted by our Supreme Court, under our rules of practice, the filing of a responsive pleading operates as a waiver of a future challenge of the court's personal jurisdiction over a party." (Citation omitted; internal quotation marks omitted.) *Investment Associates* v. *Summit Associates*, 132 Conn. App. 192, 206–207, 31 A.3d 820 (2011), cert. granted on other grounds, 303 Conn. 921, 34 A.3d 396 (2012). Although, under our rules of practice, pleadings in summary process actions advance at a different pace from those in other civil matters; see General Statutes § 47a-26c; the aforementioned principles nevertheless remain applicable. See, e.g., *St. Paul's Flax Hill Co-operative* v. *Johnson*, 124 Conn. App. 728, 739–40, 6 A.3d 1168 (2010), cert. denied, 300 Conn. 906, 12 A.3d 1002 (2011) (holding issue of personal jurisdiction waived in summary process action by defendant's failure to file timely motion to dismiss).

The defendant filed his appearance in this matter as a self-represented party on August 17, 2010, along with

an answer to the complaint. He never filed a motion to dismiss. Accordingly, having filed an appearance and a responsive pleading without timely moving to dismiss the action for lack of personal jurisdiction, the defendant waived his right later to attack the court's judgment on personal jurisdiction grounds.

## B

We next turn to the defendant's other jurisdictional argument. According to the defendant, because the reservation is sovereign land and the Schaghticoke Indians never entered into any agreement or contract with the state, the court lacked subject matter jurisdiction to adjudicate the present summary process action. We construe the defendant's claim to be that the court's exercise of jurisdiction in this matter constituted an undue infringement on the tribal sovereignty of the Schaghticoke Indians as recognized under state law. We disagree.

"Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . ." (Internal quotation marks omitted.) *Kizis* v. *Morse Diesel International, Inc.*, 260 Conn. 46, 52, 794 A.2d 498 (2002). "There is no doubt that the Superior Court is authorized to hear summary process cases; the Superior Court is authorized to hear all cases except those over which the probate courts have original jurisdiction." *Lampasona* v. *Jacobs*, 209 Conn. 724, 728, 553 A.2d 175, cert. denied, 492 U.S. 919, 109 S. Ct. 3244, 106 L. Ed. 2d. 590 (1989). The question before us is whether that jurisdiction is somehow lost when the summary process case involves an eviction from state recognized reservation land.

"Like all instrumentalities of the state of Connecticut, our courts are powerless to intervene in the exercise of

tribal self-government. Federal statute, federal common law and state statute all require us to treat bona fide Indian tribes as sovereign nations and to protect tribal rights to self-determination. . . . Because of the continuing inherent sovereignty of Indian tribes, for example, federal common law forbids states from unlawfully infring[ing] on the right of reservation Indians to make their own laws and be ruled by them. . . . Similarly, state statutes explicitly provide that the indigenous tribes . . . are self-governing entities possessing powers and duties over tribal members and reservations. . . . Any action by a state court that infringed on tribal sovereignty or interfered in tribal self-government would therefore be improper." (Citations omitted; internal quotation marks omitted.) *Golden Hill Paugussett Tribe of Indians* v. *Southbury*, 231 Conn. 563, 574–75, 651 A.2d 1246 (1995). Our United States Supreme Court has explained that inherent tribal sovereignty will impede state court jurisdiction only if "the exercise of state-court jurisdiction in [the] case would interfere with the right of tribal Indians to govern themselves under their own laws. . . . If the exercise of state court jurisdiction is compatible with tribal autonomy . . . judicial action not only is permitted, but may be required." (Citations omitted; internal quotation marks omitted) Id., 575–76 citing *Three Affiliated Tribes of the Fort Berthold Reservation* v. *Wold Engineering, P.C.*, 467 U.S. 138, 148–49, 151–52, 104 S. Ct. 2267, 81 L. Ed. 2d 113 (1984) (suggesting state's failure to exercise jurisdiction when present could violate Indians' rights under due process clause, equal protection clause and 42 U.S.C. § 1981).

Pursuant to the court's May 9, 2011 oral postjudgment ruling, the plaintiffs who initiated this action before the Superior Court collectively represent the Schaghticoke Indians. The defendant did not amend his appeal to

challenge that determination, and, thus, the determination is not properly before us for review. See Practice Book § 61-9.[4] Section 47-59a (a) provides in relevant part that members of state recognized tribes, which includes the Schaghticoke Indians, "are considered to be full citizens of the state and they are hereby granted all the rights and privileges afforded by law, that all of Connecticut's citizens enjoy. . . ." Such rights and privileges must include access to our state's courts. By initiating the summary process action in state court, the plaintiffs effectively consented to the court's jurisdiction. Further, there is nothing in the record before us indicating that the court's adjudication of the present summary process matter in any way interfered with the Schaghticoke Indians' right to self-governance or infringed on any existing tribal laws or adjudicative authority of the Schaghticoke Indians.

Additionally, although the defendant seeks to assert tribal sovereignty as a bar to the present action, he has failed to set forth the necessary factual predicate to establish his authority to assert the Schaghticoke Indians' sovereignty on his own behalf or to overcome the Schaghticoke Indians' consent to the jurisdiction of the court. Our Supreme Court has indicated that tribal sovereignty may only be invoked by a member of the tribe. See *State* v. *Velky*, 263 Conn. 602, 605 n.5, 821 A.2d 752 (2003). The defendant never asserted before the trial court or this court that he is a recognized Schaghticoke tribal member. In fact, he appears to have disavowed any such claim before the trial court.[5] The defendant

---

[4] Practice Book § 61-9 provides in relevant part: "Should the trial court, subsequent to the filing of the appeal, make a decision which the appellant desires to have reviewed, the appellant shall file an amended appeal form in the trial court within twenty days from the issuance of notice of the decision as provided for in Section 63-1. . . ."

[5] At the May 9, 2011 hearing, the following colloquy took place:

"[Attorney] Lavery: When he delineates his lineage, he says he became a specialist in Indian law, took a tribal member as a wife, had two children with tribal member Deborah Buckson, but that still does not make him a— an Indian—

only asserts that he was granted permission by tribal members to live and work on the reservation. Such an assertion alone is insufficient to allow the defendant to invoke tribal sovereignty as a bar to the court's jurisdiction in the present case. In sum, we conclude that the court properly exercised both personal and subject matter jurisdiction in adjudicating this summary process action.

## II

The defendant next claims that the trial court improperly decided a dispute over tribal leadership. Given the court's modification of its original rationale for rendering its judgment of possession in favor of the plaintiffs, we disagree.

General Statutes § 47-66i (b) sets forth the procedures for resolution of a dispute over tribal leadership, providing: "A leadership dispute shall be resolved in accordance with tribal usage and practice. Upon request of a party to a dispute, the dispute may be settled by a council. Each party to the dispute shall appoint a member to the council and the parties shall

"[The Defendant]: Nobody can condemn my rights.
"[Attorney] Lavery: —a Schaghticoke Indian.
"The Court: Don't—
"[The Defendant]: No man can be judged on his race, color, and creed.
"The Court: You can't interrupt—
"[The Defendant]: I'm sorry.
The Court: —each other.
"[The Defendant]: I'm sorry.
"The Court: Go ahead.
"[Attorney] Lavery: I just want to point out that he claimed now in court to have his lineary descendants come from the Schaghticoke Tribe.
"[The Defendant]: No, I—
"[Attorney] Lavery: He's never made that claim before. And well, we deny that.
"[The Defendant]: I—
"The Court: Okay. All right. That's not—it's not an issue.
"[The Defendant]: Yeah, it's not a big deal. I know. I just—I didn't—I didn't claim that."

jointly appoint one or two additional members provided the number of members of the council shall be an odd number. If the parties cannot agree on any joint appointment, the Governor shall appoint any such member who shall be a person knowledgeable in Indian affairs. The decision of the council shall be final on substantive issues. An appeal may be taken to the Superior Court to determine if provisions of the written description filed with the Secretary of the State pursuant to this section have been followed. If the court finds that the dispute was not resolved in accordance with the provisions of the written description, it shall remand the matter with instructions to reinstitute proceedings, in accordance with such provisions." Accordingly, as the parties and the court recognized, disputes over tribal leadership are to be resolved by the Schaghticoke Indians in the first instance or, if necessary, by a council appointed in accordance with the statute. There is no provision whereby tribal leadership disputes are to be decided first by the Superior Court. For reasons not reflected in the record, the various factions of the Schaghticoke Indians thus far have failed to avail themselves of the dispute resolution proceedings set forth in § 47-66i.

In its initial April 15, 2011 decision ruling against the defendant in this summary process matter, the trial court correctly set forth that the plaintiffs had the burden of establishing, among other elements, that they were the "owners" of the property from which they sought to evict the defendant.[6] In considering whether the plaintiffs had met that burden, the court made a

---

[6] Although reservation lands are held in trust by the state, "[a] tribe shall exercise on reservation land all rights incident to ownership except the power of alienation." General Statutes § 47-60. One right incident to property ownership is the right to bring a summary process eviction action against any person who never had a right or privilege to occupy the subject property or who had a right or privilege but such right or privilege has since terminated. General Statutes § 47a-23 (a).

finding, based on the evidence presented, that "the Schaghticoke Tribal Nation, through its [t]ribal [c]ouncil, is the governing authority for the Schaghticoke tribe." That finding arguably could be interpreted as the court deciding the ongoing and hotly contested dispute between SIT and STN over which is the legitimate governing body of the Schaghticoke Indians.

It was that particular finding that prompted SIT, which had not appeared at the summary process trial, to file its postjudgment motion to open the proceedings expressly for the purpose of presenting evidence that it, and not STN, was the legitimate governing body of the Schaghticoke Indians. The court denied the motion to open precisely because it recognized that it lacked the authority to decide the tribal leadership dispute and because it did not consider resolution of that dispute a necessary component of its summary process analysis. The court reasoned, as it had previously, that the issue of which entity was "in charge" was not properly before it, and, therefore, it did not need to hear additional evidence on that topic from SIT.

The court nevertheless agreed to open its earlier decision for the limited purpose of vacating its finding that STN, through its tribal council, was the governing authority for the Schaghticoke Indians. The court clarified as follows: "It's the Schaghticoke Indians that have the right to say who lives on the reservation. And they clearly have spoken here. Because both plaintiffs are in agreement that they do not want [the defendant] on the location." The court later stated: "I am reopening my decision and clarifying my decision, that even if [Richard] Velky,[7] in my analysis of the law, even if Velky is not the accepted and recognized tribal leader, nevertheless the plaintiffs—the plaintiffs being the Schaghticoke Indian—that—Indians, not the Schaghticoke

---

[7] Velky testified on behalf STN in his position as STN's tribal chairman.

Indian Tribe, not the Schaghticoke Tribal Nation, but the Indians that were originally recognized by this state, are the individuals that have brought this summary process action and have moved to evict [the defendant]. So, that's the clarification of the court's decision." Accordingly, the court modified that portion of its earlier decision finding that STN was the governing authority for the Schaghticoke Indians.

As previously indicated, the defendant did not amend the current appeal to challenge the court's modification of its earlier ruling, nor did he file a new appeal. See footnote 4 of this opinion. Because the court has vacated any finding that could be construed as resolving an internal dispute over tribal leadership, the defendant's claim of improper interference in that area no longer has merit.

### III

We next turn to the defendant's claim that it was improper for the court to have rendered judgment without one of the plaintiffs being represented at the summary process trial. The defendant maintains that the fact that SIT was not present for the summary process trial is grounds for a mistrial. We cannot review the defendant's claim because he has failed to establish that he is the proper party to raise it.

"The general rule is that one party has no standing to raise another's rights. . . . When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue . . . . [Standing is] ordinarily held to have been met when a complainant makes a colorable claim of direct injury he . . . is likely to suffer . . . ." (Citation omitted, internal quotation marks omitted.) *Delio* v. *Earth Garden Florist, Inc.*, 28 Conn. App. 73, 78, 609 A.2d 1057 (1992).

In his brief, the defendant's discussion of his claim that SIT's absence from the summary process trial

required a mistrial is limited to noting that SIT had sought to open the proceedings and that SIT had indicated in its motion to open "many aspects of the trial that had been adversely affected by the [c]ourt's impression that Attorney Kern had appeared as representation for both plaintiffs." The defendant then indicates his wish to "assert the same information as fact to the [c]ourt." SIT's motion to open the summary process judgment, however, focused solely on the issue of the tribal leadership dispute and whether, by proceeding in its absence, the court had deprived SIT of the right to present evidence that it is the true governing authority of the Schaghticoke Indians. Any need for such evidence became moot following the court's clarification that it was not deciding the tribal governance dispute. Because SIT also sought the eviction of the defendant from the reservation, it is unclear how its presence or presentation of the proffered evidence would have benefited the defendant. The defendant has failed to explain how he was aggrieved personally by SIT's failure to appear and to present evidence at the summary process trial. Accordingly, we conclude that the defendant lacks standing to raise the claim, and we will not consider it.

## IV

Finally, the defendant claims that the court ignored prior judicial decisions that impacted on STN's claim of authority to represent the interests of the Schaghticoke Indians. Because, as explained previously, the court vacated its finding that STN, through its tribal council, represented the proper governing authority of the Schaghticoke Indians, the defendant's claim, which attempts to show error in that finding, is moot and warrants no further review.

The judgment is affirmed.

In this opinion the other judges concurred.